# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| State of KANSAS, *et al.*, | |
| Plaintiff-Appellees, | Case No. 24-3521 |
| v. | On appeal from the United States District Court for the District of North Dakota Case No. 1:24-cv-00150-DMT |
| UNITED STATES of AMERICA, *et al.*, | |
| Defendant-Appellants. | |

## RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR

## AN ADMINISTRATIVE STAY AND STAY PENDING APPEAL

**KRIS W. KOBACH**
**Attorney General of Kansas**

Abhishek S. Kambli
*Deputy Attorney General*
Adam T. Steinhilber
*Assistant Solicitor General*
Office of the Kansas Attorney General
Topeka, Kansas 66612-1597
Phone: (785) 296-7109
Email: abhishek.kambli@ag.ks.gov
adam.steinhilber@ag.ks.gov
*Counsel for the State of Kansas*
(additional counsel on signature page)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ....................................................................... 1

BACKGROUND .......................................................................... 3

    I.    Statutory and regulatory framework ................................. 4

    II.   The Rule .................................................................. 6

    III.  Previous proceedings ................................................... 9

ARGUMENT ............................................................................. 10

    I.    Defendants cannot demonstrate irreparable harm. ........ 11

    II.   Defendants cannot make a strong showing that they are likely to succeed on the merits ............................................ 15

        a. Plaintiffs have standing .................................................. 16

        b. Venue is proper in North Dakota because North Dakota is a plaintiff ................................................. 17

        c. Defendants' Rule is unlawful ......................................... 23

        d. Plaintiffs are also likely to succeed on the merits because the Rule is arbitrary and capricious ............. 27

    III.  The remaining stay factors weigh in plaintiffs' favor .... 29

CONCLUSION ........................................................................... 33

CERTIFICATE OF SERVICE ................................................... 40

Appellate Case: 24-3521   Page: 2   Date Filed: 12/18/2024 Entry ID: 5467926

**CERTIFICATE OF COMPLIANCE**.................................................... 40

ii

# TABLE OF AUTHORITIES

## Cases

*Biden v. Nebraska,*
  143 S. Ct. 2355(2023) ................................................................ 17

*Boshears v. PeopleConnect, Inc.,*
  76 F.4th 858 (9th Cir. 2023) ..................................................... 19

*Brady v. Nat'l Football League,*
  640 F.3d 785 (8th Cir. 2011) ..................................................... 11

*Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis,*
  168 F.3d 1069 (8th Cir. 1999) .................................................... 24

*Cardinal Health, Inc. v. Holder,*
  846 F. Supp. 2d 203 (D.D.C. 2012) ............................................ 11

*Carpenters Indus. Council v. Zinke,*
  854 F.3d 1 (D.C. Cir. 2017) ....................................................... 22

*Carson v. American Brands, Inc.,*
  450 U.S. 79 (1981) ..................................................................... 18

*Chay-Velasquez v. Ashcroft,*
  367 F.3d 751 (8th Cir. 2004) ..................................................... 12

*Cigna Corp. v. Bricker,*
  103 F.4th 1336 (8th Cir. 2024) ............................................. 15, 16

*Czyzewski v. Jevic Holding Corp.,*
  580 U.S. 451 (2017) ................................................................... 21

*DHS v. Regents of the Univ. of Cal.,*
  591 U.S. 1 (2020) ....................................................................... 27

*Driscoll v. New Orleans Steamboat Co.,*
  633 F.2d 1158 (5th Cir. 1981) ................................................... 19

iii

*Estrada v. Becker,*
917 F.3d 1298 (11th Cir. 2019) ............................................................. 25

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211, 221 (2016) ...................................................................... 28

*Firearms Regul. Accountability Coal., Inc. v. Garland,*
112 F.4th 507 (8th Cir. 2024).................................................. 15, 26, 28

*Hutson v. Fehr Bros.,*
584 F.2d 833 (8th Cir. 1978) ................................................................. 19

*Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC,*
953 F.3d 1041 (8th Cir. 2020) .............................................................. 16

*Kansas v. U.S. Dep't of Educ.,*
No. 24-4041-JWB, 2024 WL 3471331 (D. Kan. July 19, 2024) ........... 14

*Kansas v. U.S. Dep't of Lab.,*
No. 2:24-CV-76, 2024 WL 3938839 (S.D. Ga. Aug. 26, 2024).............. 14

*King v. Burwell,*
576 U.S. 473 (2015) ................................................................................ 4

*League of Women Voters of U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) .................................................................. 32

*Maybelline Co. v. Noxell Corp.,*
813 F.2d 901 (8th Cir. 1987) .......................................................... 18, 20

*Missouri v. Biden,*
112 F.4th 531 (8th Cir. 2024)................................................................ 31

*Moffit v. State Farm Mut. Auto. Ins. Co.,*
11 F.4th 958 (8th Cir. 2021).................................................................. 27

*Nascone v. Spudnuts, Inc.,*
735 F.2d 763 (3d Cir. 1984)................................................................... 18

iv

*NCAA v. Governor of N.J.*,
   730 F.3d 208 (3d Cir. 2013) ................................................................ 22

*Nebraska v. Biden*,
   52 F.4th 1044 (8th Cir. 2022) ............................................................ 31

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................... 10, 13, 16

*Novus Franchising, Inc. v. Dawson*,
   725 F.3d 885 (8th Cir. 2013) .............................................................. 18

*Packard Elevator v. I.C.C.*,
   782 F.2d 112 (8th Cir. 1986) ............................................. 12, 13, 15, 21

*Plyler v. Doe*,
   457 U.S. 202 (1982) ......................................................................... 22

*Reinholdson v. Minnesota*,
   346 F.3d 847 (8th Cir. 2003) .............................................................. 18

*Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*,
   547 U.S. 47 (2006) ..................................................................... 17, 19

*Shawnee Tribe v. Mnuchin*,
   984 F.3d 94 (D.C. Cir. 2021) .............................................................. 32

*Texas v. United States*,
   549 F. Supp. 3d 572 (S.D. Tex. 2021) *aff'd in relevant part*, 50 F.4th
   498 (5th Cir. 2022) ........................................................................... 25

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .............................................................. 22

*Texas v. United States*,
   No. 1:18-CV-00068, 2023 WL 5950808 (S.D. Tex. Sept. 13, 2023) ......... 6

*United States v. Novak*,

Appellate Case: 24-3521    Page: 6    Date Filed: 12/18/2024    Entry ID: 5467926

476 F.3d 11 1041 (9th Cir. 2007) ........................................................ 24

*United States v. Texas*,
 579 U.S. 547 (2016) ............................................................... 22

*Winter v. Natural Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ................................................................. 12

**Statutes and Regulations**

Pub. L. 104-193, Title VI ...................................................... 3

110 Stat. 2105 ................................................................ 3

110 Stat. 2112 ................................................................ 3

5 U.S.C. § 706 ............................................................... 27

8 U.S.C. § 401 ................................................................ 3

8 U.S.C. § 1601 .......................................................... 3, 4, 32

8 U.S.C. § 1611 .......................................................... 3, 4, 24

8 U.S.C. § 1641 ............................................................ 4, 23

28 U.S.C. § 1391 ......................................................... 18, 20

28 U.S.C. § 1404 ............................................................. 18

28 U.S.C. § 1406 ............................................................. 18

42 U.S.C. § 18031 ............................................................. 5

42 U.S.C. § 18032 ........................................................ 3, 5, 24

42 U.S.C. § 18041 ........................................................... 5, 8

8 C.F.R. § 274a.12 ................................................. 5, 7, 8, 25, 26

45 C.F.R. § 152.2 ............................................................. 6

77 Fed. Reg. 52,614 (Aug. 30, 2012) ......................................... 6

89 Fed. Reg. 39,392 (May 8, 2024). ................................... *passim*

Appellate Case: 24-3521    Page: 7    Date Filed: 12/18/2024 Entry ID: 5467926

89 Fed. Reg. at 39,395 .................................................................... 6, 7

89 Fed. Reg. at 39,396 .................................................................... 7, 28

89 Fed. Reg. at 39,408 .................................................................... 8, 26

89 Fed. Reg. at 39,409 ........................................................................ 8

89 Fed. Reg. at 39,415 ...................................................................... 14

89 Fed. Reg. at 39,424 .................................................................. 17, 29

89 Fed. Reg. at 39,425 ...................................................................... 29

89 Fed. Reg. at 39,426 ............................................................. 8, 17, 29

89 Fed. Reg. at 39,434 ...................................................................... 28

## Other Authorities

14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ....................................... 18

Kan. State Dep't of Educ., *Expenditures Per Pupil: 2020-2021* at 8 (Jan. 2021), available at https://shorturl.at/bIUXY ........................................ 30

Memorandum from Janet Napolitano, Sec'y, DHS, to David Aguilar, Acting Comm'r, U.S. Customs & Border Prot., et al. (June 15, 2012), available at https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-whocame-to-us-as-children.pdf ...... 5

*Resp. and Reply Br. for Appellants / Cross-Appellees*, *Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024) (Nos. 24-2332, 24-2351), 2024 WL 4497006 .................................................................................................... 31

*The Marketplace in Your State*, https://www.healthcare.gov/marketplace-in-your-state/ (last visited Dec. 12, 2024) .................................................................................................. 8

Appellate Case: 24-3521     Page: 8     Date Filed: 12/18/2024 Entry ID: 5467926

# INTRODUCTION

This case involves an effort by the Biden-Harris Center for Medicare and Medicaid Services (CMS) to push forward an unlawful Rule[1] that conferred public benefits on a group of illegal aliens. Specifically, CMS sought to impermissibly confer Affordable Care Act (ACA) eligibility on individuals in the Deferred Action for Childhood Arrivals (DACA) program (a program courts have held was never lawful to begin with). But federal law plainly prohibits public benefits from going to those here illegally; so, the promise to DACA recipients was never tenable. But the Biden-Harris CMS pushed forward anyway in a futile effort to boost their electoral prospects.

Nineteen Plaintiffs were harmed by the Rule and sued in the District of North Dakota, where the inevitable result of Defendants' unlawful actions came to fruition. After briefing and argument, the district court issued a geographically limited injunction that preliminarily halted Defendants from implementing the Rule against

---

[1] Specifically: Clarifying the Eligibility of Deferred Action for Childhood Arrivals (DACA) Recipients and Certain Other NonCitizens for a Qualified Health Plan Through an Exchange, Advance Payments of the Premium Tax Credit, Cost-Sharing Reductions, a Basic Health Program, 89 Fed. Reg. 39,392 (May 8, 2024).

1

Plaintiff States. *See* R. Doc. 117. Now Defendants ask this Court to stay the preliminary injunction and spare them the consequences of pursuing an agency power grab lacking any legal basis. For support, Defendants cite the speculative harms of the same DACA recipients to whom they made an unlawful promise. This Court should decline.

Defendants cannot come close to meeting the requisite heavy burden that justifies the extraordinary stay-pending-appeal relief they seek. They could not come up with any irreparable harm that the federal government will face absent a stay and instead rely on the speculative harm of DACA beneficiaries. But the federal government cannot bootstrap harm by making promises the agency knew it could not legally keep. That alone warrants denying a stay.

Defendants' merits arguments fare no better. The district court appropriately concluded it had jurisdiction in this case and that there is no universe in which this Rule is lawful. The remaining stay factors for also weigh in Plaintiffs' favor, including because a stay would inflict severe irreparable harm on Plaintiffs.

Because Defendants failed to meet their burden, this Court should lift the administrative stay and allow the Order to remain effective.

## BACKGROUND

Illegal aliens who have been granted deferred deportation under the DACA program are *statutorily* ineligible for a range of federal public benefits, including subsidized health insurance under the ACA. Congress explicitly limited eligibility to participate in such exchanges to American citizens, nationals, and other "lawfully present" individuals. 42 U.S.C. § 18032(f)(3). Congress also excluded DACA recipients from the list of qualified aliens who are authorized to receive federally-funded benefits. *See* Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. 104-193, Title VI, 8 U.S.C. § 401, 110 Stat. 2105, 2112 (currently codified at 8 U.S.C. § 1611). It did so to discourage illegal immigration and the attendant drain on tax dollars. 8 U.S.C. § 1601(6).

But the Biden-Harris CMS granted DACA recipients access to the ACA's subsidized health exchanges through the Rule, which claims DACA recipients are "lawfully present" under CMS regulations. *See* 89 Fed. Reg. at 39,392. This Rule encourages DACA recipients and other unlawfully present persons to illegally remain in the United States in the hope of receiving subsidized health insurance through the ACA, the

3

very harm Congress sought to prevent. Their continued unlawful presence will require Plaintiffs to expend their limited resources supporting unlawfully present aliens. It will also directly increase administrative and economic burdens on states who run their own ACA exchange.

## I. Statutory and regulatory framework

Through the PRWORA, Congress announced a "compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). Accordingly, "Notwithstanding any other provision of law," any noncitizen who is not a "qualified alien" is ineligible for any federal public benefit. 8 U.S.C. § 1611(a). Only certain, enumerated categories of aliens qualify. 8 U.S.C. § 1641(b), (c).

When enacting the ACA, Congress similarly limited eligibility for Qualified Health Plans (QHPs)[2] to American citizens, nationals, and

---

[2] The ACA "require[d] the creation of an 'Exchange' in each State— basically, a marketplace that allows people to compare and purchase insurance plans." *King v. Burwell*, 576 U.S. 473, 479 (2015). Each state may "establish its own Exchange, but [the ACA] provides that the Federal Government will establish the Exchange if the State does not." *Id.* The ACA requires all exchanges to "'make available qualified health

4

others who are "lawfully present" here. 42 U.S.C.§ 18032(f)(3). The ACA further requires CMS to verify that health exchange applicants are lawfully present. 42 U.S.C. § 18031(c)(2)(B).

In June 2012, the Department of Homeland Security created the DACA program, declaring that certain individuals who came to the United States illegally as children could request consideration of deferred action (*i.e.*, deferral of their required deportation) for a period of two years, subject to renewal.[3] These individuals were also made eligible for DHS work authorization. *See* 8 C.F.R. § 274a.12(c)(33). DHS argued this was merely an exercise of prosecutorial discretion to defer removal action for a period of time, and it expressly disclaimed providing anyone with lawful status because "[o]nly the Congress, acting through its legislative authority, can confer these rights." *See* Memorandum, *supra*.

---

plans to qualified individuals and qualified employers.'" 42 U.S.C. § 18031(d)(2)(A).

[3] *See* Memorandum from Janet Napolitano, Sec'y, DHS, to David Aguilar, Acting Comm'r, U.S. Customs & Border Prot., et al. (June 15, 2012), available at https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-whocame-to-us-as-children.pdf.

5

Consequently, in August 2012, CMS amended its definition of "lawfully present"—located in 45 C.F.R. § 152.2—to take the same position Plaintiffs take today: DACA recipients are not lawfully present aliens. *See generally* Pre-Existing Condition Insurance Plan Program, 77 Fed. Reg. 52,614 (Aug. 30, 2012).

Last year, a federal district court enjoined and vacated DHS's DACA rule as unlawful; that court, though, allowed DHS to continue administering the program for individuals who registered prior to July 16, 2021. *See Texas v. United States*, No. 1:18-CV-00068, 2023 WL 5950808, at *1 (S.D. Tex. Sept. 13, 2023).

## II.    The Rule

Through the Rule, the Biden-Harris CMS changed its position to redefine both DACA recipients and employment-authorized aliens as "lawfully present" for purposes of the ACA. 89 Fed. Reg. at 39,392. The agency justified its reversal by citing "the broad aims of the ACA to increase access to health coverage" 89 Fed. Reg. at 39,395. According to CMS, the prior practice of excluding DACA recipients "failed to best effectuate congressional intent in the ACA." *Id.* The Rule, the agency claimed, "aligns with the goals of the ACA—specifically, to lower the

6

number of people who are uninsured in the United States and make affordable health insurance available to more people." 89 Fed. Reg. at 39,396. CMS also asserted it was motivated by the national economic importance of DACA recipients, its desire to support the DACA policy, and the disproportionately high percentage of uninsured DACA recipients. 89 Fed. Reg. at 39,395–96.

Accordingly, CMS declared that it "s[aw] no reason to treat DACA recipients differently from other noncitizens who have been granted deferred action." 89 Fed. Reg. at 39,396. The Rule acknowledged the injunction against DACA in a footnote, saying that "[c]urrent court orders prohibit DHS from fully administering the DACA final rule. However, a partial stay permits DHS to continue processing DACA renewal requests and related applications for employment authorization documents." 89 Fed. Reg. at 39,395.

Besides DACA recipients, the Rule adds aliens granted employment authorization under 8 C.F.R. § 274a.12(c) into the definition of "lawfully present" for purposes of ACA eligibility. This expands the categories of aliens considered lawfully present from seven enumerated categories under the former regulatory definition

7

to *thirty-six categories* covered under 8 C.F.R. § 274a.12(c). *See* 89 Fed. Reg. at 39,408. CMS's only justification was that it would be easier to determine who was lawfully present if anyone with DHS work authorization was included. *Id.* Even so, CMS acknowledged that its new definition of "lawfully present" might include noncitizens who were, in fact, not lawfully present. *See id.*; *see also* 89 Fed. Reg. at 39,409.

Because the ACA allows states to create their own exchange programs to handle QHP enrollment, 42 U.S.C. § 18041, the Rule recognized that it would impose significant costs on these states. Specifically: (1) $194,650 to develop and code changes to each state's exchange eligibility system, and (2) $624,142 in state application processing charges to assist individuals impacted by the Rule. 89 Fed. Reg. at 39,426. Among those with state-based exchanges are Plaintiffs Idaho, Kentucky, and Virginia.[4] The Rule was to be effective November 1, 2024.

---

[4] *See The Marketplace in Your State*, https://www.healthcare.gov/marketplace-in-your-state/ (last visited Dec. 12, 2024).

## III. Previous proceedings

In August 2024, Plaintiffs sued Defendants, seeking injunctive and declaratory relief to prevent Defendants from implementing the Rule. R. Doc 1, 27. Plaintiffs soon moved to stay the Rule and for a preliminary injunction. R. Doc. 35, 63. Following a hearing and supplemental briefing, Defendants moved to dismiss the case based on lack of subject-matter jurisdiction and failure to state a claim, or alternatively to transfer venue. R. Doc. 108.

On December 9, the district court issued an 18-page Order, R. Doc. 117, issuing a preliminary injunction and stay enjoining Defendants from enforcing the Rule against Plaintiffs.[5]

The court affirmed that North Dakota had standing because the Rule incentivized DACA recipients to remain when they would otherwise leave, necessarily causing the State to incur monetary harm. *See* R. Doc. 117 at 6–10. It also acknowledged the harm states with state-based exchanges would endure. R. Doc. 117 at 15. Turning to the

---

[5] That this was only interim relief staying the effective date of the Rule counsels against Defendants' "emergency" request. And the incoming presidential administration likely holds a different view on the Rule than the current one, and deserves an opportunity to assess this case and determine how best to proceed.

9

merits, the court explained that the plain statutory language foreclosed the Rule's attempt to expand ACA eligibility. R. Doc. 117 at 13–14. It then concluded Plaintiffs would be irreparably harmed should the Rule take effect, R. Doc. 117 at 15, and that the equities and public interest supported injunctive relief, R. Doc 117 at 16. The court incorporated its reasoning against Defendants' motion to dismiss or transfer, which it accordingly denied. R. Doc. 117 at 17–18.

On December 18, 2024 (after Defendants sought relief in this Court), the district court denied Defendants' motion to stay. R. Doc. 130.

## ARGUMENT

Defendants must justify a stay, which is an "intrusion into the ordinary processes of administration and judicial review," and "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (internal quotations omitted). In evaluating Defendants' Motion, this Court considers (1) whether Defendants have made a "strong showing" that they are likely to succeed on the merits; (2) whether Defendants "will be irreparably injured absent a stay"; (3) whether a "stay will substantially injure the

10

other parties interested in the proceeding"; and (4) the "public interest."
*Id.* at 434.

Defendants do not come close to meeting this high standard.
Fatally, they never provide this Court with *any* argument that they—
the federal government—will be irreparably harmed absent a stay.
Instead, they try to improperly commandeer the speculative harms of
third parties.

Defendants fare no better elsewhere. As the district court properly
recognized, Congress's words and policy choices foreclose the Rule,
meaning Defendants will not be able to succeed on appeal. Additionally,
the Rule is arbitrary and capricious under the Administrative
Procedure Act (APA). The remaining factors cut heavily against
granting a stay, as Plaintiffs are the ones facing irreparable harm and
the public has no interest in an unlawful Rule.

## I. Defendants cannot demonstrate irreparable harm

To obtain a stay, "The *movant* must show that *it* will suffer
irreparable injury unless a stay is granted." *Brady v. Nat'l Football
League*, 640 F.3d 785, 789 (8th Cir. 2011) (emphases added); *see also
Nken*, 556 U.S. at 434 (recognizing same). In other words, the movant

11

must be under threat of irreparable harm—not rest on purported harms "to third parties." *See Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

In their Motion, Defendants rely entirely on the alleged irreparable harm that others—individuals who enrolled in health-insurance plans under the Rule—will suffer absent a stay pending appeal. *See* Mot. at 18–19. Defendants facially fail their burden of establishing that they will suffer irreparable harm. They never show, let alone argue, that the federal government will be irreparably injured absent a stay. And they are foreclosed from arguing any actual harms in their reply.[6] *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004). Because they "failed to establish . . . that they will suffer irreparable harm unless the stay is granted," they are not entitled to relief. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).

But even if Defendants could rely on third-party harm, their arguments still fail. They speculate without any evidence about the

---

[6] But should they attempt to argue further harms, those harms are self-inflicted and insufficient. *See* R. Doc. 127 at 9–12.

harms that will apparently come to some DACA recipients, their children (more speculation), and their communities (even more speculation). That is not enough. *See id.* (rejecting "allegations of irreparable harm are speculative and unsubstantiated by the record"). They do not present anything in the record to demonstrate what (if any) harm the 2,600 DACA recipients are going to experience by temporarily restoring the pre-Rule status quo.

The Supreme Court, in the context of immigration, has held that even "the burden of removal alone cannot constitute the requisite irreparable injury" and those "removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435. Similarly, any delay in receiving subsidized health insurance alone cannot constitute irreparable injury for DACA recipients; they will eventually obtain it if Defendants prevail. Without evidence in the record (which Defendants should not be permitted to shoehorn in through their reply) on how the absence a public benefit at this juncture constitutes irreparable injury, Defendants fail their burden.

13

And the foundation of the alleged harms to DACA recipients is the false promise Defendants made to them, *i.e.*, they could receive a public benefit (an ACA subsidy) even though federal law prohibits it. To the extent any harm occurred, it was entirely the fault of Defendants, not the district court's Order. At a minimum, Defendants could have postponed the effective date of Rule when they knew they faced legal action to avoid the precise situation they created. *See, e.g.*, *Kansas v. U.S. Dep't of Lab.*, No. 2:24-CV-76, 2024 WL 3938839, at *4 (S.D. Ga. Aug. 26, 2024); *Kansas v. U.S. Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3471331, at *4 (D. Kan. July 19, 2024). This would have given DACA recipients certainty for the time being.

In fact, Defendants themselves delayed the effective date of this Rule by one year past its original effective date. *See* 89 Fed. Reg. at 39,415 ("[W]e had targeted a potential effective date of November 1, 2023."). Defendants were clearly willing and able to postpone the effective date of this Rule when convenient to them despite the alleged harms DACA recipients would face in receiving delayed healthcare. They could have easily delayed the effective date of the Rule for a short period of time to prevent the entirely predictable effects of litigation.

14

But Defendants chose not to and instead ask this Court to intervene now, after the fact. The Court should reject that invitation.

Defendants have failed at step one since they have not shown they will suffer irreparable harm absent a stay. Absent irreparable harm, there is no need for a stay. Accordingly, this Court should deny their request. *See Packard Elevator*, 782 F.2d at 115.

## II. Defendants cannot make a strong showing that they are likely to succeed on the merits

Even if Defendants were actually suffering irreparable harm, that would not be enough for a stay as they also must make a "strong showing" of likelihood of success on the merits, which they cannot do.

This Court applies a "layered" standard of review to a preliminary injunction: legal conclusions are reviewed de novo, factual findings are reviewed for clear error, and the "application of the law to the facts" is reviewed for an abuse of discretion. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342–43 (8th Cir. 2024) (quotation marks omitted); *see also Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 517 (8th Cir. 2024). A district court has "broad" discretion to grant a preliminary injunction in light of the showing before it, *Bricker*, 103

15

F.4th at 1343, which is entitled to deference "because of its greater familiarity with the facts and the parties," *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020). The district court did not abuse its discretion, let alone err. Defendants cannot make a strong showing of likely success.

### a. Plaintiffs have standing

Defendants argue that North Dakota lacks standing and therefore venue is improper. But Defendants' arguments fail because (a) at least one state has standing and (b) North Dakota remains a plaintiff. Defendants cannot make "a strong showing" they will succeed on appeal unless they demonstrate the district court's factual findings are clearly erroneous. *See Nken*, 556 U.S. at 426. Nor can they sustain a request to transfer out of this Court's jurisdiction by contriving new, extra-statutory limits on the traditional forum rules.

Plaintiffs are nineteen States. Defendants have challenged the standing of only one: North Dakota. Three States—Kentucky, Idaho, and Virginia—raised additional theories of harm because they administer state-run ACA exchanges for QHP enrollment. These states will face increased administrative and system costs when they are

16

forced to distribute ACA exchange subsidies to a new class of illegal aliens who are disproportionately lower-income. Defendants do not dispute this, let alone make a "strong showing" that these states lack standing. Nor could they; the Rule expressly acknowledges these costs will be incurred by the Plaintiff States. *See* 89 Fed. Reg. at 39,424, 39,426.

It is clear that at least three Plaintiff States have standing.[7] Therefore, this Court (like the district court) has jurisdiction. *See Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023).

### b. Venue is proper in North Dakota because North Dakota is a plaintiff

Because the Court has jurisdiction over the case, Defendants can only succeed if they make a strong showing that venue was improper.

---

[7] During the hearing, the district court believed it was "reasonably clear that the state-based exchanged states have a direct injury." R. Doc. 89 at 15 (transcript of October 15, 2024, motion hearing). Additionally, the court recognized their harm in its Order. R. Doc. 117 at 15.

17

And venue in the District of North Dakota is proper if North Dakota remains a Plaintiff. *See* 28 U.S.C. § 1391(e)(1).

As a preliminary matter, Defendants have not made a "strong showing" that they can even appeal the denial of a venue transfer at this time. To be sure, Defendants, in a footnote, assert that the denial or their motion to dismiss or transfer is before this Court. Mot. at 6 n.3. But they have the burden of establishing appellate jurisdiction, *Reinholdson v. Minnesota*, 346 F.3d 847, 849 (8th Cir. 2003), and it is doubtful that the denial of their motion to transfer venue is even appealable at this stage, *see Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 890–92 (8th Cir. 2013);[8] *see also* 14D Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ("An order of transfer under Section 1406(a) is interlocutory and cannot be appealed immediately."); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772–73 (3d Cir. 1984) ("orders granting or denying motions to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) are not immediately appealable").

---

[8] *Dawson*, 725 F.3d at 891, explains that the proposition for which Defendants cite *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 903 n.1 (8th Cir. 1987), *see* Mot. at 6 n.3, has been narrowed by *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), and thus does not bind this Court.

18

Different orders can be contained in the same document, and the district court's decision to combine multiple orders in one document did not make them all appealable. *See, e.g.*, *Boshears v. PeopleConnect, Inc.*, 76 F.4th 858, 861–62 (9th Cir. 2023) (dismissing portion of appeal for lack of appellate jurisdiction because "[n]otwithstanding its label as a single 'order,' the document clearly contains multiple orders"). If their denied motion to transfer is not properly on appeal at this time, then although Defendants can challenge North Dakota's standing, they cannot properly challenge venue. *See Hutson v. Fehr Bros.*, 584 F.2d 833, 837 (8th Cir. 1978) (recognizing "that the question of jurisdiction . . . is distinct from that of venue"); *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158, 1159 n.1 (5th Cir. 1981) ("Venue may be proper or improper, independent of questions of subject[-]matter . . . jurisdiction.").

Defendants' arguments on improper venue fail on their own terms too. As previously noted, at least the three Plaintiffs that run state-based exchanges have standing, meaning the district court had subject-matter jurisdiction over this action. The court was not required to dismiss the other Plaintiffs, *cf. Rumsfeld*, 547 U.S. at 52 n.2, and

19

Defendants point to no case requiring such a result. Instead, they seek to conjure new limitations on venue that lack legal support—a dearth of authority that precludes any "strong showing" of likely merits success by definition.

*Maybelline Co. v. Noxell Corp.*, 813 F.2d 901 (8th Cir. 1987), has no bearing on this case. *Maybelline* did not involve a multistate lawsuit against the federal government or a federal agency, so this Court simply recognized that venue would be proper in that case only "if [the defendants were] doing business there or if [the plaintiff's] claim arose there." *Id.* at 903. By contrast 28 U.S.C. § 1391(e)(1) allows the federal government and federal agencies to be sued in any venue where a "plaintiff resides if no real property is involved in the action." Simply put: At least one state had standing to establish subject-matter jurisdiction + North Dakota is a plaintiff = venue was proper.

Regardless, if the question of venue is properly before this Court, venue was proper in the District of North Dakota because North Dakota will be injured by the Rule. Plaintiffs submitted the Declaration of Steve Camarota, an expert who analyzed studies of DACA recipients' behavior and summarized his findings, which demonstrated the

20

financial harm. "By reducing emigration, the [Rule] will mean more people with DACA will remain in the country than otherwise would be the case, creating more costs for states and local government." R. Doc. 35-1 at 6. And since "a loss of even a small amount of money is ordinarily an 'injury,'" standing lies. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). North Dakota presented evidence of two specific monetary harms: the costs of providing driver's licenses and identification cards and public education.

Licenses and Identification: North Dakota established net costs to the State for issuing driver's licenses and identification cards to DACA recipients. R. Doc. 93 And because driver's licenses and identification cards must be renewed if a person remains in the State, the State will continue incurring those costs as long as DACA recipients remain. North Dakota thus presented "proof that the harm has occurred in the past and is likely to occur again." *Packard Elevator*, 782 F.2d at 115. That is enough.

Public Education: Defendants do not dispute that there is at least one dependent of a DACA recipient enrolled in public education in North Dakota, which costs the State approximately $15,000 per child

per year. *See* R. Doc. 103-2; R. Doc. 111-1. Because North Dakota is legally required to provide public education for students regardless of their legal status, *Plyler v. Doe*, 457 U.S. 202, 230 (1982), it is not speculative that the State will continue incurring costs related to the education of DACA recipients' children, who will foreseeably remain in the State due to the Rule's unlawful benefits.

Defendants try to undermine North Dakota's injuries as speculative. But Defendants, not Plaintiffs, are the ones speculating. North Dakota presented repeated evidence to establish its harms, which the district court properly considered in light of basic economic logic and common sense. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017) (Kavanaugh, J.). Additionally, it is immaterial that the Rule might conceivably provide some other economic benefits to Plaintiff States; courts do not engage in "accounting excise[s]" when considering standing. *Texas v. United States*, 809 F.3d 134, 156 (5th Cir. 2015) (quoting *NCAA v. Governor of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013)), *aff'd by an equally divided Court*, *United States v. Texas*, 579 U.S. 547 (2016).

22

In short, North Dakota is likely to continue incurring monetary harm from DACA recipients remaining in the State, and DACA recipients will be incentivized to remain in the State if the Rule is allowed to take effect and provide them with valuable (though entirely unlawful) public benefits. North Dakota thus has standing, and venue is proper in any event (assuming an appeal of venue is even properly before the Court at this juncture).

### c. Defendants' Rule is unlawful

The Rule is unlawful because it violates the PRWORA. And Defendants exceeded their statutory authority by attempting to redefine "lawfully present" in the ACA without authorization. The district court properly recognized that the Rule is likely unlawful, and Defendants fail to post any meritorious argument to the contrary.

The PRWORA allows "qualified aliens" to be eligible for public benefits, meaning they are lawfully admitted under the Immigration and Nationality Act (INA) or otherwise have lawful status under a specific provision of immigration law. *See* 8 U.S.C. § 1641. The DACA program does not grant "qualified alien" status for purposes of the

Appellate Case: 24-3521     Page: 31     Date Filed: 12/18/2024 Entry ID: 5467926

PRWORA, so DACA recipients cannot receive public benefits under the law. Yet the Rule purports to do just that.

Defendants argue that the ACA's use of "lawfully present" overrides the PRWORA's prohibition of subsidies to non-qualified aliens. But this gets the law backwards. In the PRWORA, Congress broadly prohibited non-qualified aliens from receiving any federal public benefit "[n]otwithstanding any other provision of law." 8 U.S.C. § 1611(a). Phrases such as this "broadly sweep aside potentially conflicting laws." *United States v. Novak*, 476 F.3d 11 1041, 1046 (9th Cir. 2007); *see also Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis*, 168 F.3d 1069, 1075 (8th Cir. 1999) ("The phrase, 'notwithstanding any other provision of law,' signals that the [statute] supersedes other statutes that might interfere with or hinder the attainment of this objective." (citations omitted)). The PRWORA controls because the ACA does not provide any textual override.

And the ACA itself also blocks DACA recipients from receiving ACA subsidies and coverage. DACA recipients are not lawfully present, and only lawfully present individuals are eligible for a QHP. *See* 42 U.S.C. § 18032(f)(3). DACA recipients are simply "given a reprieve from

24

potential removal; that does not mean they are in any way 'lawfully present' under the [INA]." *Estrada v. Becker*, 917 F.3d 1298, 1305 (11th Cir. 2019) (citation omitted). Indeed, "the INA expressly and carefully provides legal designations allowing defined classes of aliens to be lawfully present, and Congress has not granted the Executive Branch free rein to grant lawful presence to persons outside the ambit of the statutory scheme." *Texas v. United States*, 549 F. Supp. 3d 572, 609–10 (S.D. Tex. 2021) (internal quotations omitted), *aff'd in relevant part*, 50 F.4th 498 (5th Cir. 2022).

Defendants have repeatedly insisted that DACA recipients can be considered lawfully present. But Defendants attempt to conflate DACA—an unlawful regulatory form of deferred action—with other statutory forms of deferred action. The difference is that, of all the forms of deferred action, only DACA has no basis in the INA—or any other statute—and therefore no claim to granting lawful status on anyone.

And DACA recipients are not even the only individuals with unlawful status whom the Rule makes eligible for the ACA. The Rule also defines as "lawfully present" all aliens granted employment

25

authorization under 8 C.F.R. § 274a.12(c). But not even Defendants believe that everyone granted employment authorization is lawfully present. *See* 89 Fed. Reg. at 39,408 ("*Almost* all noncitizens granted employment authorization under 8 CFR 274a.12(c) are already considered lawfully present under existing regulations." (emphasis added)). This, too, violates the ACA by making some unlawfully present aliens eligible for coverage that the text of the ACA explicitly prohibits.

The ACA limited eligibility to lawfully present individuals without authorizing Defendants to change the definition of "lawfully present."[9] Instead, it authorized them only to determine which individuals fit that definition. *See* R. Doc. 117 at 14. And there is no plausible argument that individuals whose *unlawful presence* is tolerated by immigration enforcement (*i.e.*, DACA recipients) are *lawfully present*.

Finally, Defendants misinterpret the district court's conclusion regarding Plaintiffs' likelihood of success. The district court only issued relief because it "concluded Plaintiffs will likely succeed on the merits

---

[9] The legislative history of the ACA demonstrates that it was never intended to expand the universe of those who are "lawfully present" for the purpose of the subsidy. Indeed, this was even discussed while the House was debating the bill. *See* R. Doc. 81 at 12–13.

because CMS acted contrary to law." R. Doc. 117 at 14. That satisfies this Court's standard. *See Garland*, 112 F.4th at 517.

### d. Plaintiffs are also likely to succeed on the merits because the Rule is arbitrary and capricious

Plaintiffs are also likely to succeed on the merits because the Rule is arbitrary and capricious. These alternative claims, though not considered by the district court, can sustain the Order and thus are fair game. *See Moffit v. State Farm Mut. Auto. Ins. Co.*, 11 F.4th 958, 960 (8th Cir. 2021). Defendants do not mention—let alone rebut—Plaintiffs' arbitrary and capricious claims and so cannot make a strong showing of success on the merits.

Under the APA, a court must also "hold unlawful and set aside agency action" that is "arbitrary, capricious [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). An agency acts arbitrarily and capriciously when it departs sharply from prior practice without reasonable explanation or fails to consider either alternatives to its action or the affected communities' reliance on the prior rule. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 29–31 (2020). The Rule is arbitrary and capricious for three reasons.

27

*First*, Defendants did not provide a reasonable explanation for their sharp departure from their prior policy of considering DACA recipients "unlawfully present" for purposes of ACA eligibility. They merely stated that the change in definition is consistent with the goals of the ACA, *see* 89 Fed. Reg. at 39,396, without explaining or judging tradeoffs for departing from the prior policy which made DACA recipients ineligible, *see* R. Doc. 35 at 13–14. That is not enough. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

*Second*, the Rule's definition of DACA recipients as "lawfully present" is facially irrational: DACA recipients are aliens whose unlawful presence is subject to deferred action; they cannot be considered lawfully present at the same time. *See* R. Doc. 35 at 14. An agency action cannot be upheld if it is "internally inconsistent or not reasonable and reasonably explained." *Garland*, 112 F.4th at 520.

*Finally*, the Rule did not consider costs to the States due to increased operating costs for states with their own exchange. *See* R. Doc. 35-2 at 7–8. And Defendants failed to consider the costs of decreased emigration in all Plaintiff States, including costs for issuing driver's licenses and identification cards and for public education. *See*,

28

*e.g.*, R. Doc. 35 at 14–15. By considering only one subset of costs—the costs for "system changes" to state-based exchange states, *see* 89 Fed. Reg. at 39,434—Defendants failed to consider foreseeable and substantial costs to the Plaintiffs, which is arbitrary and capricious.

These arbitrary and capricious claims make Plaintiffs' likelihood of success even stronger.

## III. The remaining stay factors weigh in Plaintiffs' favor

Plaintiffs will be substantially harmed by a stay. Defendants conceded some harms in the Rule, as Kentucky, Idaho, and Virginia would be required to update their state-based exchange eligibility systems. *See* 89 Fed. Reg. at 39,424–26. These states have already bore and will continue to bear the foreseeable costs of providing additional customer service related to applications for health plans, none of which are reversible, and for investigations and complaints. *See* R. Doc. 35-2 at 7.

Plaintiffs are also harmed because the Rule encourages unlawfully present individuals to remain. *See* R. Doc. 35-1. An estimated 158,906 DACA recipients reside in Plaintiff States, R. Doc. 35 at 6–7, and the continuing presence of each one imposes costs on the States. For

29

example, at least at least 126 DACA recipients reside in North Dakota, where they receive driver's licenses and identification cards at a net cost to the state of $584.74. *See* R. Doc. 103 at 5. And some DACA recipients or their dependents enroll in public education in the state at an annual cost of $14,345.87. *See* R. Doc. 111 at 3. These costs are typical of all the State costs for education. *See, e.g.*, Kan. State Dep't of Educ., *Expenditures Per Pupil: 2020-2021* at 8 (Jan. 2021), available at https://shorturl.at/bIUXY. Plaintiffs also will incur costs for the use of other public services, including the administration of the criminal justice system. *See* R. Doc. 35 at 18.

Defendants try to fault Plaintiffs for being untimely in seeking injunctive relief. But Plaintiffs moved for relief on August 30, more than *two months* before the Rule was to take effect. Defendants cite no authority for the proposition that suing months before a Rule takes effect constitutes a delay that negates irreparable harm, nor does any exist.

The alleged harms to 2,600 DACA recipients from the injunction also do not weigh in favor of a stay and similar arguments have been rejected by this court. As previously noted, if removal from a country is

30

not necessarily irreparable harm, then a temporary pause in receiving a public benefit under the ACA certainly is not. And when weighing the equities, this Court has rejected similar arguments. In the Government's brief in *Missouri v. Biden*, it argued that a forbearance used to comply with an injunction would harm to millions of borrowers because it would cause "widespread confusion and potential financial harm through the delay of forgiveness under both ICR and other authorities . . . Thus, borrowers enrolled in SAVE now face a longer timeline to forgiveness, even if the Department prevails." *Resp. and Reply Br. for Appellants / Cross-Appellees*, *Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024) (Nos. 24-2332, 24-2351), 2024 WL 4497006, at *56. This Court rejected these speculative harms in the balancing inquiry primarily because "States cannot turn back the clock on any loans that have already been forgiven." *Missouri*, 112 F.4th at 538; *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("[T]he equities strongly favor an injunction considering the irreversible impact the Secretary's debt forgiveness action would have.").

In this case, multiple states who run their own exchanges have already experienced irreversible harm through the monetary costs of

updating their state exchanges and processing applications. If the Court grants a stay the harm would continue. Even if Plaintiffs ultimately prevail, those are sunk costs that could never be recovered. If millions of borrowers who had their loan forgiveness temporarily paused did not tip the equities when there are irreversible monetary costs to the other side, the speculative harm to 2,600 DACA recipients while there is a temporary pause in the Rule cannot either.

This is also the rare case where the public interest is clear, and in statute: "It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). The Rule vitiates that interest. A stay therefore undermines that compelling government interest in removing a large incentive for illegal immigration.

Additionally, there is no public interest in an unlawful administrative action, like Defendants'. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). And Plaintiffs' strong likelihood of success on the merits supports a finding that a stay is not in the public interest. *See Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

Appellate Case: 24-3521    Page: 40    Date Filed: 12/18/2024 Entry ID: 5467926

The district court denied the stay precisely for these reasons. In denying Defendants' request, the district court specifically considered the equities (including the alleged harm to DACA recipients) yet recognized that they favored Plaintiffs, who established they were "likely to succeed on the merits," and that "the public has no interest in the perpetuation of unlawful agency action." R. Doc. 130 at 3. Defendants could "not tip of the balance of equities in their favor" before the district court, R. Doc. 130 at 3, and they cannot do so before this Court. Therefore, the Court should not grant a stay.

## CONCLUSION

The Biden-Harris CMS took a gamble on an unlawful Rule in hopes of political gain. They lost, and now want this Court to come to their aid on an emergency timeframe. But Defendants have not come close to meeting their burden for stay, so this Court should deny Defendants' Motion. Plaintiffs join Defendants in their request for the Court to issue an order on the stay by December 20, 2024.

**Dated:** December 18, 2024

Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

33

/s/ Adam T. Steinhilber
Abhishek S. Kambli
*Deputy Attorney General*
Adam T. Steinhilber
*Assistant Solicitor General*
Office of the Kansas Attorney General
Topeka, Kansas 66612-1597
Phone: (785) 296-7109
Email: abhishek.kambli@ag.ks.gov
adam.steinhilber@ag.ks.gov
*Counsel for the State of Kansas*

**DREW H. WRIGLEY**
**North Dakota Attorney**
**General**

/s/ Philip Axt
Philip Axt
*Solicitor General*
Office of Attorney General
600 E. Boulevard Ave Dept.
125
Bismarck, North Dakota
58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov
*Counsel for the State of North Dakota*

**STEVE MARSHALL**
**Alabama Attorney General**

/s/ Robert M. Overing
Robert M. Overing
*Deputy Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Phone: (334) 242-7300
Fax: (334) 353-8400
Email:
Robert.Overing@alabamaag.gov
*Counsel for the State of Alabama*

34

**TIM GRIFFIN**
**Arkansas Attorney General**

*/s/ Nicholas J. Bronni*
Nicholas J. Bronni
*Solicitor General*
Dylan L. Jacobs
*Deputy Solicitor General*
Office of the Arkansas
Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201
Phone: (501) 682-2007
Email:
Nicholas.bronni@arkansasag.gov
*Counsel for the State of Arkansas*

**ASHLEY MOODY**
**Florida Attorney General**

*/s/ Natalie Christmas*

Natalie Christmas
*Senior Counselor*
Henry Charles Whitaker
*Solicitor General*
Florida Attorney General's Office
PL-01 The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
Fax:  (850) 487-2564
Email:
Natalie.christmas@myfloridalegal.com
henry.whitaker@myfloridalegal.com
*Counsel for the State of Florida*

Appellate Case: 24-3521    Page: 43    Date Filed: 12/18/2024 Entry ID: 5467926

**RAÚL R. LABRADOR**
**Attorney General of Idaho**

*/s/ Alan Hurst*
Alan Hurst
*Solicitor General*
Matthew L. Maurer
*Deputy Attorney General*
Sean M. Corkery
*Assistant Solicitor General*
Office of the Attorney General
PO Box 83720,
Boise, Idaho 83720
Phone: (208) 334-2400
Email:
Alan.Hurst@ag.idaho.gov
Matthew.Maurer@ag.idaho.go
v
Jack.Corkery@ag.idaho.gov
*Counsel for the State of Idaho*

**THEODORE E. ROKITA**
**Attorney General of Indiana**

*/s/ James A. Barta*
James A. Barta
*Solicitor General*
Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
Phone: (317) 232-0709
Email: james.barta@atg.in.gov
*Counsel for the State of Indiana*

**BRENNA BIRD**
**Attorney General of Iowa**

*/s/ Eric H. Wessan*
Eric H. Wessan
*Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
Phone: (515) 823-9117
Email:
Eric.Wessan@ag.iowa.gov
*Counsel for the State of Iowa*

**RUSSELL COLEMAN**
**Attorney General of Kentucky**

*/s/ Zachary M. Zimmerer*
Matthew F. Kuhn
*Solicitor General*
Zachary M. Zimmerer
*Assistant Attorney General*
Kentucky Office of the Attorney
General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Phone: (502) 696-5617
Email: Zachary.zimmerer@ky.gov
matt.kuhn@ky.gov
*Counsel for the Commonwealth of
Kentucky*

36

**ANDREW BAILEY**
**Attorney General of Missouri**

/s/ *Joshua M. Divine*
Joshua M. Divine
*Solicitor General*
Office of the Missouri Attorney General
Supreme Court Building
207 West High Street
Jefferson City, Missouri 65102
Phone: (573) 751-8870
Email: Josh.Divine@ago.mo.gov
*Counsel for the State of Missouri*

**AUSTIN KNUDSEN**
**Attorney General of Montana**

*/s/ Peter M. Torstensen, Jr.*
Peter M. Torstensen, Jr.
*Deputy Solicitor General*
Christian B. Corrigan
*Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, Montana 59620-1401
Phone: (406) 444.2026
Email: peter.torstensen@mt.gov
*Counsel for the State of Montana*

**MICHAEL T. HILGERS**
**Attorney General of Nebraska**

*/s/ Zachary B. Pohlman*
Zachary B. Pohlman
*Assistant Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Phone: (402) 471-2682
Email: Zachary.Pohlman@Nebraska.gov
*Counsel for the State of Nebraska*

**JOHN M. FORMELLA**
**Attorney General of New Hampshire**

*/s/ Brandon F. Chase*
Brandon F. Chase
*Assistant Attorney General*
New Hampshire Department of Justice
1 Granite Place – South
Concord, New Hampshire 03301
Phone: (603) 271-3650
Email: brandon.f.chase@doj.nh.gov
*Counsel for the State of New Hampshire*

37

**DAVE YOST**
**Attorney General of Ohio**

*/s/ T. Elliot Gaiser*
T. Elliot Gaiser
*Ohio Solicitor General*
30 East Broad Street, 17th
Floor
Columbus, Ohio 43215
Phone: (614)466-8980
Fax: (614) 466-5087
Email:
thomas.gaiser@ohioago.gov
*Counsel for the State of Ohio*

**ALAN WILSON**
**Attorney General of South Carolina**

*/s/ Joseph D. Spate*
Joseph D. Spate
*Assistant Deputy Solicitor General*
Office of the South Carolina Attorney General
1000 Assembly Street
Columbia, South Carolina 29201
Phone: (803) 734-3371
Email: josephspate@scag.gov
*Counsel for the State of South Carolina*

**MARTY J. JACKLEY**
**Attorney General of South Dakota**

*/s/ Clifton Katz*
Clifton Katz
*Assistant Attorney General*
Office of the Attorney General
State of South Dakota
1302 E. Hwy. 14, Suite #1
Pierre, South Dakota 57501
Phone: (605) 773-3215
Email:
Clifton.katz@state.sd.us
*Counsel for the State of South Dakota*

**JONATHAN SKRMETTI**
**Attorney General and Reporter of Tennessee**

*/s/ Whitney D. Hermandorfer*
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Phone: 615-741-1400
Email:
whitney.hermandorfer@ag.tn.gov
*Counsel for the State of Tennessee*

38

**KEN PAXTON**
**Attorney General of Texas**

Brent Webster
*First Assistant Attorney
General*
Ralph Molina
*Deputy First Assistant
Attorney General*
Austin Kinghorn
*Deputy Attorney General,
Legal Strategy*
Ryan D. Walters
*Chief, Special Litigation
Division*

*/s/ David Bryant*
David Bryant
*Senior Special Counsel*
Munera Al-Fuhaid
*Special Counsel*
Office of Attorney General of
Texas
P.O. Box 12548
Austin, Texas 78711
Phone: (512) 936-1700
Email:
David.Bryant@oag.texas.gov
    Munera.Al-
Fuhaid@oag.texas.gov
*Counsel for the State of Texas*

**JASON S. MIYARES**
**Attorney General of Virginia**

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher
*Principal Deputy Solicitor General*
Virginia Office of the Attorney
General
202 North 9th Street
Richmond, Virginia 23219
Phone: (804) 786-2071
Fax: (804) 786-1991
Email: kgallagher@oag.state.va.us
*Counsel for the Commonwealth of
Virginia*

39

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of December 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Adam T. Steinhilber*
Adam T. Steinhilber
*Counsel for the State of Kansas*

## CERTIFICATE OF COMPLIANCE

The foregoing document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 6,403 words.[10] It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared using Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

---

[10] Defendants moved for leave to file this Response in excess of the traditional word limit.

40

Pursuant to Circuit Rule 28A(h)(2), I further certify that the foregoing has been scanned for viruses, and the foregoing is virus free.

*/s/ Adam T. Steinhilber*
Adam T. Steinhilber
*Counsel for the State of Kansas*

41