# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| The State of KANSAS, *et al.*, <br><br> *Plaintiffs-Appellees*, <br> v. <br> UNITED STATES, *et al.*, <br><br> *Defendants-Appellants*. | No. 24-3521 |

### MOTION OF CLAUDIA MOYA LOPEZ, HYUN KIM, DANIA QUEZADA TORRES, AND CASA, INC. TO FILE AS *AMICI CURIAE* IN SUPPORT OF A STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), Claudia Moya Lopez, Hyun Kim, Dania Quezada Torres, and CASA, Inc. ("Movants") respectfully move for leave to file the accompanying brief as *amici curiae* in support of the stay motion, *see* 8th Cir. Dkt. No. 5466501, filed in this appeal by Defendants-Appellants the United States and the Centers for Medicare & Medicaid Services ("Defendants").[1]

Movants are three noncitizens who were granted deferred action through the Deferred Action for Childhood Arrivals ("DACA") program,

---

[1] Pursuant to Fed. R. App. P. 26.1(a) and Eighth Circuit Rule 26.1A, CASA, Inc. hereby certifies that it is a non-profit organization, has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

and an immigrants-rights nonprofit organization whose members include many DACA recipients. Movants jointly moved to intervene below to defend a federal regulation (the "Final Rule") that for the first time would allow DACA recipients to purchase affordable health insurance through marketplaces created by the Affordable Care Act ("ACA").

As DACA recipients (and a representative of DACA recipients) who have been unlawfully denied access to the ACA marketplaces for more than a decade, Movants have a distinct perspective from Defendants on the statutes underlying the Final Rule. Movants therefore raised multiple unique arguments in the district court in defense of the Final Rule that Defendants omitted from their briefs. But the district court preliminarily enjoined and stayed the Final Rule in 19 States without deciding Movants' motion to intervene, allowing Movants to participate, or considering any of Movants' unique arguments. *See* R.Doc. 117, at 1-2 & nn.1-3.

Defendants are now pursuing in this Court a stay pending appeal of the district court's order, *see generally* 8th Cir. Dkt. No. 5466501, on an expedited briefing schedule set by the Court, *id.*, Dkt. No. 5466719. Based on their filings below, Movants are uniquely positioned to assist

this Court in deciding that motion. And Movants have a distinct interest in doing so because, according to Defendants, the district court's order, if not stayed, will prevent Movants Lopez and Kim and numerous CASA members from being able to use the health insurance they purchased while the Final Rule was in effect. This Court should therefore grant Movants leave to participate as *amici*.

**1.** Claudia Moya Lopez was born in 1992 in El Salvador and currently lives in Chesterfield, Virginia. She arrived in the United States with her mother when she was eleven years old. In 2015, she was approved for DACA and work authorization, and her DACA status remains current. As a small-business owner who operates a roofing company, she does not have access to employer-based health insurance and without access to the ACA marketplace, could not afford to purchase insurance for herself.

Access to consistent and reliable healthcare is especially important to Lopez because she was diagnosed with acute promyelocytic leukemia ("ACP") in 2023 and requires ongoing monitoring because of the risk of ACP recurrence. Once the Final Rule went into effect, Lopez purchased health insurance through the marketplace and has paid her first

3

premium. If the district court's preliminary injunction and stay remain in effect for Virginia, Lopez will not be able to use this plan or afford regular blood tests, monitoring, and health visits to ensure her ACP does not recur.

Hyun Kim was born in 1996 in South Korea and currently lives in Annandale, Virginia. He arrived in the United States with his mother when he was three years old. In 2017, Kim was approved for DACA and work authorization, and his DACA status remains current. As a restaurant worker who has been saving up to attend college, Kim receives base pay and tips but no employer-sponsored health insurance. Because of his lack of access to health insurance, Kim has not had a physical in three years and has never seen a dentist. After the Final Rule went into effect, Kim enrolled in a health insurance plan through the marketplace and qualified for advance premium tax credits for his monthly premiums. If the district court's preliminary injunction and stay remain in effect for Virginia, Kim will not be able to use this plan or receive tax credits for his monthly premiums, placing him at risk of more serious medical issues and correspondingly higher medical costs in the future.

Dania Quezada Torres was born in 1997 in Mexico. She arrived in the United States with her mother and sisters when she was five years old. In 2013, she was approved for DACA and work authorization. As a third-year law student at the University of Washington, she currently receives extremely limited health coverage through her university, which she relies on to afford the medication she needs for her attention deficit hyperactivity disorder and obsessive-compulsive disorder. When Dania is unable to access her university health coverage, she has to ration her medication. After the Final Rule went into effect, Torres purchased health insurance through the marketplace and has paid her first premium. If the Final Rule is set aside as unlawful, she will not be able to use this plan. Accordingly, although Torres resides in Washington, which is not one of the states to which the district court's preliminary injunction and stay order applies, she has an interest in the ultimate merits of this lawsuit.

CASA is a nonprofit organization headquartered in Langley Park, Maryland with offices in Maryland, Virginia, Pennsylvania, and Georgia. Founded in 1985, CASA is the largest membership-based immigrant rights organization in the mid-Atlantic region, with more than 150,000

lifetime members from across the United States. CASA has over 2,700 members who are DACA recipients, including Movants Lopez and Kim. CASA conducts campaigns to inform members of immigrant communities of their rights and assists individuals in applying for a variety of government benefits. CASA also informs the public and assists its members in purchasing health insurance through ACA marketplaces. The district court's order has caused CASA to invest significant staff hours in educating members about the shifting legal landscape and helping DACA recipients to pursue other avenues for healthcare if the ACA marketplaces are now closed to them.

**2.** Movants seek leave to file an *amici curiae* brief because they believe that DACA recipients have a statutory right to access the ACA marketplaces and can provide an important perspective in considering both the lawfulness of the Final Rule and the harms arising from the district court's injunction and stay order. Moreover, Movants are well positioned to contribute meaningfully to the Court's consideration of Defendants' present stay motion as a result of their filings below.

Before the district court, Movants sought to intervene as defendants to defend the Final Rule, and they presented several

6

arguments not raised by Defendants, which are included in the present *amici curiae* brief:

*First*, Movants join Defendants in arguing that North Dakota lacks Article III standing and, accordingly, that venue is improper. But Movants' briefs below—and their proposed *amicus* brief here—go further by providing a detailed statistical breakdown showing that North Dakota's alleged injury from the Final Rule is entirely speculative.

*Second*, Movants defend the legality of the Final Rule on the merits by marshaling multiple rules of statutory interpretation and multiple statutory provisions that Defendants leave aside because they cut against the government's institutional interests. Whereas Defendants have repeatedly argued that "the Final Rule's definition of 'lawfully present' to include DACA recipients is *consistent* with" the ACA, R.Doc. 61, at 21 (emphasis added)—and thus a *permissible* alternative to the prior definition that excluded DACA recipients—Movants argue that a proper interpretation of the ACA *requires* access for all individuals granted deferred action, including DACA recipients. In support of that argument, Movants invoke statutory provisions that provide unambiguously that all "lawfully present" individuals "may enroll" in the

7

ACA marketplaces, 42 U.S.C. § 18032(d)(3), (f)(3), and indeed were *required* to do so under the ACA's Individual Mandate, 26 U.S.C. § 5000A(a), (d). *See* Proposed *Amicus* Br. 7-9. Defendants cite none of these provisions.

Movants also argue that longstanding Attorney General and Department of Homeland Security regulations construing the term "lawful presence" not only *inform* the meaning of that term in the ACA, as Defendants argue, Mot. 14, 16, but *compel* an interpretation of that term that includes DACA recipients, *see* Proposed *Amicus* Br. 9-11. In support of that argument, Movants invoke two rules of interpretation that Defendants do not: (1) the rule that "respect to Executive Branch interpretations" is "especially warranted" when an interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time," *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2257-58 (2024); and (2) the rule that when a term "ha[s] acquired a settled … administrative interpretation," courts must "accept the already settled meaning" when construing the phrase, *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993).

*Third*, Movants explain through their own experiences the

8

significant harm that the district court's order will impose on individual DACA recipients and immigrant-rights organizations that outweigh any speculative increase in costs to Plaintiffs.

The district court's failure to consider these arguments is part of the reason its order is unlikely to survive on appeal and that order should be stayed pending appeal. Movants' proposed *amicus* brief would thus assist the Court in ensuring it evaluates all aspects of these issues.

**3.** Allowing Movants to participate as *amici* is especially warranted given the posture of this appeal. When the district court entered its order preliminarily enjoining and staying the Final Rule without deciding Movants' motion to intervene or permitting Movants to participate, Defendants and Movants both appealed, and Defendants filed a motion to stay the district court's order. Movants support a stay of the district court's order, but are choosing at this stage to participate only as *amici*—rather than intervening in this appeal or filing a separate stay motion in their own appeal—to avoid complicating the expedited timeline entered by this Court. While *amicus* participation is no substitute for intervention—and Movants intend to move to intervene at the appropriate time—accepting Movants' *amicus* brief will at least give

9

Movants an opportunity to be heard on the critical issues raised by Defendants' stay motion.

## CONCLUSION

This Court should grant leave to file the *amici curiae* brief in support of Defendants motion to stay the district court's order pending appeal.

Dated: December 19, 2024

Respectfully submitted,

By: /s/ *Matthew S. Rozen*

Nicholas Espiritu
Tanya Broder
NATIONAL IMMIGRATION
LAW CENTER
3450 Wilshire Boulevard
Suite 108–62
Los Angeles, CA 90010
espiritu@nilc.org
broder@nilc.org
Telephone: 213.639.3900
Facsimile: 213.639.3911

Joanna E. Cuevas Ingram
Hilda Bonilla
NATIONAL IMMIGRATION
LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
cuevasingram@nilc.org
bonilla@nilc.org
Telephone: 202.216.0261
Facsimile: 202.216.0266

Matthew S. Rozen
   *Counsel of Record*
Matthew Butler
GIBSON, DUNN &
CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539
mrozen@gibsondunn.com
mbutler@gibsondunn.com

Betty X. Yang
GIBSON, DUNN &
CRUTCHER LLP
200 Ross Avenue, Suite 2100
Dallas, TX 75201
byang@gibsondunn.com
Telephone: 214.698.4200
Facsimile: 214.571.2900

*Attorneys for Movants*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation set forth in FRAP 26(d)(2). This document contains 1,720 words, excluding the parts exempted by FRAP 27(a)(2)(B) and FRAP 32(f). This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

/s/ *Matthew S. Rozen*
Matthew S. Rozen

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2024, I filed the foregoing motion using the Court's CM/ECF system, which will send a notice of the filing to counsel for all parties.

/s/ *Matthew S. Rozen*
Matthew S. Rozen