No. 24-3521

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

STATE OF KANSAS, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of North Dakota

## DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR A STAY PENDING APPEAL

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

CATHERINE M.A. CARROLL
  *Deputy Assistant Attorney General*

MELISSA N. PATTERSON
LEIF OVERVOLD
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7226*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

ARGUMENT ...............................................................................................................1

I. PLAINTIFFS FAILED TO ESTABLISH PROPER VENUE OR STANDING......................1

    A. The District Court Erred In Entering An Injunction Without Proper Venue..............................................................................................1

    B. Although The Court Need Not Consider Them, Remaining Plaintiffs' Standing Arguments Fail................................................4

II. THE GOVERNMENT IS LIKELY TO SUCCEED ON THE MERITS............................5

III. CONCRETE AND IMMEDIATE HARMS TO INDIVIDUALS, THE FEDERAL GOVERNMENT, AND THE PUBLIC GREATLY OUTWEIGH PLAINTIFFS' UNSUPPORTED ASSERTIONS OF MINIMAL INJURY ................................. 10

CONCLUSION ....................................................................................................... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# ARGUMENT

## I. PLAINTIFFS FAILED TO ESTABLISH PROPER VENUE OR STANDING

### A. The District Court Erred In Entering An Injunction Without Proper Venue

**1.** This Court's precedent is clear that a district court's injunction should be reversed when venue was improper. *See Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 907 (8th Cir. 1987). Plaintiffs attempt (Opp. 20) to distinguish *Maybelline* because it involved a different venue provision, but whether plaintiffs invoke 28 U.S.C. § 1391(b) or § 1391(e)(1) is irrelevant. *Maybelline*'s key point is that this Court should vacate an injunction issued by a court lacking venue; any other rule would promote forum-shopping for preliminary relief. Indeed, plaintiffs offer a literal formula enabling such gamesmanship, asserting that one plaintiff with standing can secure an injunction in any forum to which another plaintiff (no matter how lacking in standing) can lay claim. *See* Opp. 20. This Court should reject plaintiffs' proposed mathematics of venue manipulation.

Relying on *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885 (8th Cir. 2013), plaintiffs argue (Opp. 18) this Court lacks jurisdiction to consider venue. But *Dawson* confirms the opposite. The Court there held that the interlocutory dismissal of a defendant was not immediately appealable but explained that the dismissal would have been "reviewable if it were 'inextricably intertwined' with the district court's" grant of injunctive relief against a different defendant. 725 F.3d at 890-893. Here,

venue is clearly intertwined with the preliminary-injunction grant. Consistent with *Maybelline*, the district court addressed the threshold venue issue before considering a preliminary injunction. *See* Op. 5-10. Thus, regardless of whether the transfer denial is itself appealable, the Court can consider venue in determining likelihood of success on the merits in this appeal.

Contrary to plaintiffs' assertion (Opp. 18 n.8), *Dawson* did not "explain[]" that *Maybelline*'s holding has been "narrowed" by the earlier *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981). *Dawson* does not mention *Maybelline*, and *Carson* addressed an entirely distinct issue: the appealability of an interlocutory order that does "not in terms 'refuse' an 'injunction'" but has the practical effect of doing so. *Id.* at 83-84 (alterations omitted). The district court's order granting an injunction is undoubtedly immediately appealable under 28 U.S.C. § 1292(a)(1), and *Maybelline* makes clear that the injunction should be reversed if venue was improper.

**2.** Contrary to plaintiffs' suggestion (Opp. 16-17, 19-20), the Court must consider North Dakota's standing to evaluate venue. Under *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), a court need only determine that any plaintiff has standing to ensure its jurisdiction. But when venue is challenged, the court must find that the particular plaintiff establishing venue has standing. Thus, in *Georgia Republican Party v. SEC*, the court dismissed a petitioner on standing grounds and transferred on venue grounds regardless of other petitioners' standing. 888 F.3d 1198, 1201-1205 (11th Cir. 2018). Likewise, in *Railway Labor*

2

*Executives' Ass'n v. ICC*, the Ninth Circuit considered whether a petitioner who could establish venue had standing, despite a different petitioner's unchallenged standing. 958 F.2d 252, 255-256 (9th Cir. 1991).

**3.** North Dakota lacks standing.  Plaintiffs have no response to the Supreme Court's reasoning in *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023), which forecloses North Dakota's indirect-expenditure theory of Article III injury.  And even were such purported injuries cognizable, North Dakota did not show they are traceable to the final rule and redressable by an injunction.  The district court erred (Mot. 9-10) in relying on an unsupported "common-sense inference" that DACA recipients would leave the country—and thus reduce State spending—absent the final rule.  Op. 9.  Plaintiffs now rely (Opp. 22) on *Carpenters Industrial Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017), but the court's "common sense" there was confirmed by the challenged rule itself and a declaration.[1]

Plaintiffs misplace reliance (Opp. 20-21) on Steven Camarota's declaration, which the district court did not cite for good reason.  Camarota stated that the availability of health insurance "*can* impact the migration decision of immigrants" generally, R.Doc. 35-1, at 3-4, but did not address the DACA population, a unique group given their tenure in this country, receipt of deferred action, and work-authorization eligibility, *see* R.Doc. 61, at 12-13 & n.6.  And Camarota's reliance on

---

[1] Clear-error review is unavailable here (*contra* Opp. 16), because the district court made an unsupported inference, not a factual finding.

3

probabilities is particularly uncompelling given the few DACA recipients in North Dakota. Mot. 10-11. Plaintiffs submitted no evidence regarding DACA recipients' immigration decisions or motivations.

### B. Although The Court Need Not Consider Them, Remaining Plaintiffs' Standing Arguments Fail

The district court addressed only North Dakota's standing, and this Court need not go farther. The Court should reverse the preliminary injunction and order the case transferred to a proper venue to permit the transferee court to consider remaining plaintiffs' standing.

In any event, none of the plaintiffs has standing. Fifteen other plaintiff States, like North Dakota, allege no direct harm. The remaining three—Idaho, Kentucky, and Virginia—run State-based exchanges and allege they would incur administrative costs to change their platforms. But as defendants explained, R.Doc. 61, at 16-19, plaintiffs failed to establish that, given States' existing capacities, the final rule actually imposed any out-of-pocket costs. *Cf. FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 390-391 (2024) (no standing where doctors did not show "both" an increase in patient numbers "*and* … a resulting diversion of the doctors' time and resources"). Thus, plaintiffs also cannot establish injury based on the final rule's estimates (*contra* Opp. 17), which did not address any particular State's circumstances.

Furthermore, plaintiffs "must establish a substantial risk of *future* injury … likely to be redressed by an injunction." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024)

4

(emphasis added). Plaintiffs do not contest that Idaho, Kentucky, and Virginia necessarily already made all platform changes before open enrollment began November 1. An injunction cannot now redress any past injury.

Plaintiffs err in arguing (Opp. 16-17) that they "will face increased administrative and system costs when they are forced to distribute ACA exchange subsidies." The "subsidies" plaintiffs reference are refundable tax credits that the federal government may advance and pay to insurance carriers. *See* 26 U.S.C. § 36B (establishing credit); 42 U.S.C. § 18081 (federal government determines eligibility); *id.* § 18082(c)(2) (Treasury Secretary makes any advance payment). Plaintiffs identify no way in which the federal government's distribution of that money may harm them.

## II. THE GOVERNMENT IS LIKELY TO SUCCEED ON THE MERITS

**A.** Defendants demonstrated (Mot. 12-18) they are likely to succeed on the merits because Congress empowered HHS to determine who is "lawfully present" for ACA purposes, and HHS adopted an established, decades-old understanding of that phrase. Like the district court, plaintiffs simply ignore this phrase's longstanding use in PRWORA and then the ACA. Deferred-action recipients have been defined as "lawfully present" for purposes of certain federal-benefits statutes since the first PRWORA regulation, reflecting that such persons "have been permitted to remain in the United States either by an act of Congress or through some other policy determination." 61 Fed. Reg. 47,039, 47,040 (1996); *see* Mot. 12-15.

5

Plaintiffs cite decisions from the Eleventh Circuit and a district court. *See* Opp. 24-25. Neither decision, however, addressed the ACA, 42 U.S.C. § 18032(f)(3), or engaged meaningfully with the backdrop against which Congress enacted that provision. *See, e.g.*, *Texas v. United States*, 549 F. Supp. 3d 572, 578 (S.D. Tex. 2021) (simply noting "a pre-existing regulation" regarding lawful presence (citing 8 C.F.R. § 1.3(a)(4)(vi)). Nor can plaintiffs rely on their assertion (Opp. 25) that DACA itself is unlawful; although that issue is the subject of separate litigation, plaintiffs raise no such challenge here, and it was not a basis for the preliminary injunction. In any event, their claim that DACA is unlike previous deferred-action policies because it "has no basis in the INA," Opp. 25, cannot be squared with such policies' history, which plaintiffs do not address. *See* Cong. Research Serv., Analysis of June 15, 2012 DHS Memorandum, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children 20-23 (2012), https://perma.cc/RA9Z-7RSK.[2]

Plaintiffs do not defend the district court's conflation of those "lawfully present" under the ACA with "qualified aliens" under PRWORA. Op. 14. But they suggest that PRWORA's language must "sweep aside" the ACA's provision. Opp. 24. As defendants noted (Mot. 16-17), however, the ACA establishes a different eligibility

---

[2] A legislator's statement plaintiffs cited below (*see* Opp. 26 n.9) simply indicates that the ACA limits eligibility to noncitizens "lawfully present in the United States," consistent with the statutory text. *See* R.Doc. 81, at 12-13.

6

standard than PRWORA's, in the more specific context of ACA-exchange eligibility, in a more recent enactment than PRWORA. It is well-established that "[a] specific provision generally takes precedence over a general provision adopted earlier." *United States v. Kidd*, 963 F.3d 742, 748 (8th Cir. 2020). PRWORA's clause stating 8 U.S.C. § 1611(a) applies "[n]otwithstanding any other provision of law" does not alter Congress's subsequent choices in the ACA. This Court has rejected efforts like plaintiffs' (Opp. 24) to use a "notwithstanding" clause to ignore a more specific provision, citing the "'fundamental canon of statutory construction'" focusing on statutory context and the Court's duty "[t]o give effect, if possible, to every provision" of the relevant statutes. *Kidd*, 963 F.3d at 748-749. PRWORA itself reflects that "alien[s] who [are] lawfully present" is a broader category than "qualified alien[s]." 8 U.S.C. § 1611(a), (b)(2); *see* Mot. 16. If PRWORA already confined ACA eligibility to "qualified aliens," the ACA's textual limitation to the broader category of noncitizens "lawfully present" would be meaningless, and plaintiffs do not even attempt to argue otherwise.[3]

**B.** Plaintiffs urge alternative grounds unaddressed by the district court. But a district court abuses its discretion when, as here, it grants a preliminary injunction based on erroneous legal conclusions. *See, e.g.*, *Barrett v. Claycomb*, 705 F.3d 315, 320

---

[3] Plaintiffs try to dismiss the district court's repeated invocation of a "fair chance of success" standard in its merits analysis as immaterial (Opp. 26-27), but they do not defend the error. *See* Mot. 17-18.

(8th Cir. 2013). While this Court can in some circumstances affirm a judgment on alternative grounds, "whether to grant a preliminary injunction is a matter of discretion, not a question of right," such that the district court should "determine, in the first instance, whether the plaintiffs' showing on a particular claim warrants preliminary injunctive relief." *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011); *see also, e.g.*, *Powell v. Noble*, 798 F.3d 690, 703 (8th Cir. 2015) (leaving it to the district court to address likelihood of success in the first instance and "'determine whether the injunction should issue'").

In any event, plaintiffs' additional challenges are meritless. Plaintiffs fault the rule (Opp. 25-26) for including certain noncitizens with approved employment-based immigrant-visa petitions while they transition to lawful-permanent-resident status, along with their spouses and children. But plaintiffs made no attempt to show that they were harmed by—much less are entitled to injunctive relief as to—this aspect of the rule or that this issue would justify enjoining the rule as to all DACA recipients. *See, e.g.*, *Hershey v. Jasinski*, 86 F.4th 1224, 1229 (8th Cir. 2023) (observing that "standing must exist 'as to each challenged provision'"). And the rule reflects that extending eligibility to these categories of noncitizens is entirely consistent with the understanding of "lawfully present" that HHS adopted. *See* 89 Fed. Reg. 39,392, 39,408 (2024) (noting these categories "act as a 'bridge' to allow [noncitizens in this situation] to maintain employment authorization" while awaiting immigrant visas).

8

Plaintiffs' claim that the rule is arbitrary and capricious (Opp. 27-29) ignores that HHS explained at length that its prior decision to treat DACA recipients differently than other deferred-action recipients was not required by the ACA and "failed to best effectuate" Congress's intent to increase availability of affordable health insurance and lower the number of uninsured individuals. 89 Fed. Reg. at 39,395. HHS further explained that the rule's approach both aligns with how DHS has long interpreted "lawful presence" and comports with DHS's goals reflected in the 2022 DACA rule to "provide recipients with a degree of stability." *Id.* While plaintiffs would prefer to ignore the relevant regulatory history, HHS explained both why deferred-action recipients have long been considered "lawfully present" for related purposes and why it changed its policy to align with this established understanding. Finally, HHS considered costs that States may generally incur operating their own exchanges, *see id.* at 39,423-24, and insofar as plaintiffs suggest HHS should have also considered incidental effects they now allege the rule has on State social-services spending, they neither raised that issue before the agency, *see* State of Kansas, Comment on Docket No. CMS-9894-P (June 23, 2023), https://perma.cc/9Q8VK5M2, nor substantiated any such concern to date, *see supra* pp.3-4.

### III. CONCRETE AND IMMEDIATE HARMS TO INDIVIDUALS, THE FEDERAL GOVERNMENT, AND THE PUBLIC GREATLY OUTWEIGH PLAINTIFFS' UNSUPPORTED ASSERTIONS OF MINIMAL INJURY

Plaintiffs do not contest that the preliminary injunction will, within days, strip thousands of individuals of health-insurance policies that already exist or are about to go into effect. *See* R.Doc. 119-1. Nor do plaintiffs contest that the injunction will force HHS to incur substantial costs and risk disruption by rolling out significant technological changes to the federal health-insurance platform, which serves millions of Americans, in the middle of open enrollment. *See id.* Instead, plaintiffs either ignore these harms or invite the Court to disregard them in favor of plaintiffs' own illusory and unproven injury. This Court should decline such invitations and find the clear equitable balance weighs against the preliminary injunction and in favor of a stay pending appeal.

**A.** Plaintiffs' current attempt (Opp. 11-12) to preclude defendants from invoking individual DACA recipients' harms is surprising, since plaintiffs opposed such individuals' intervention on the ground that the federal government could represent their interests. *See* R.Doc. 77. Plaintiffs specifically argued that the particularized "economic harms" that proposed-intervenors articulated were irrelevant because such harms "present no possibility of divergence" from defendants' position. *Id.* at 6-7; *see* R.Docs. 49-2, 49-4 (Virginia DACA recipients explaining their need for health insurance). Having argued that DACA recipients' participation "would be duplicative of the Defendants' efforts," R.Doc. 77, at 7, plaintiffs cannot now object

10

to defendants' attempts to ensure that the preliminary injunction's infliction of significant, individualized harms on DACA recipients is considered by this Court.

Although plaintiffs do not contest that the injunction will force HHS to cancel thousands of health-insurance policies, they suggest (Opp. 13) that such cancellation might not harm the policyholders or anyone else. That suggestion cannot be reconciled with HHS's conclusions based on the voluminous rulemaking record. *See, e.g.*, 89 Fed. Reg. at 39,396. Were there any doubt, proposed-intervenors' filings below would resolve it. *See* R.Docs. 49-2, 49-4. Nor does the possibility that the thousands of individuals harmed by the injunction might be able to enroll in health-insurance policies later mean that the forced cancellation of those policies now is reparable. *See* Opp. 13, 30-31. Unlike a wrongful removal, which is not "categorically irreparable" given the possibility of an order permitting return, *Nken v. Holder*, 556 U.S. 418, 435 (2009), the loss of a 2025 health-insurance policy—with all attendant consequences on individuals' health and medical costs—cannot later be remedied, nor can the impact of forgone medical care.

Moreover, plaintiffs entirely ignore the injunction's impact on HHS and health-insurance exchanges. HHS spent months ensuring the smooth operation of the federal exchange during the critical open-enrollment period. *See* R.Doc. 119-1, at 5. The injunction forces HHS to make a "change in programming logic" despite its usual "change moratorium" that exists "to avoid the risk that a system change could inadvertently cause disruptions and prevent consumers from enrolling in full-year

11

coverage." *Id.* at 3-4; *see id.* at 4 (describing "real" risks of such mid-stream changes, illustrated by a 2021 "significant failure rate" from an "emergency change"). Plaintiffs offer no response.

Plaintiffs entirely err in arguing (Opp. 12 n.6, 14) that the government is responsible for such harms because it could have stayed the rule's effective date. The government had no obligation to stay a duly promulgated rule simply because someone challenged it; the harms here flow from the district court's injunction of the rule, not the government's long-planned and timely effectuation of it.

**B.** Plaintiffs fare no better in establishing any meaningful harms on their side of the equitable balance. To begin, plaintiffs repeatedly conflate the merits and equities, as did the district court. *See* Opp. 14, 32; Op. 15; R.Doc. 130, at 3. The Supreme Court has made clear that courts must evaluate likelihood of success on the merits and likelihood of irreparable harm separately—and that even if these two foundational showings are made, the equities may still "require[] denial of the requested injunctive relief." *Winter v. NRDC*, 555 U.S. 7, 21-23 (2008). Plaintiffs' improper invocation of merits arguments in their equitable pitch underscores the inadequacy of their showing.

To the extent plaintiffs invoke rule-related costs within the three plaintiff States running their own exchanges, they openly rely on costs these States "have already bor[n]e," Opp. 29; *see* Opp. 30-31, without even attempting to assert that such costs would be remedied by prospective injunctive relief. *See* Mot. 20. And they provide no

12

support for their suggestion that these States will actually incur out-of-pocket expenses due to any marginal increase in future customer-service calls. *Compare* Opp. 29, *with* Mot. 21. Furthermore, any administrative costs would likely be offset by additional fees plaintiffs would collect from insurers. *See, e.g.*, Ky. Rev. Stat. § 304-17B-021(1)(a). Even if such offsetting benefits cannot negate an injured party's standing, they are certainly relevant to the Court's equitable balancing. Moreover, even if cognizable, costs to three States cannot support a 19-State injunction.

Plaintiffs' reprise (Opp. 29-30) of North Dakota's unavailing standing argument fails to demonstrate irreparable harm. As unestablished and unlikely as it is that any of the approximately 130 DACA recipients in North Dakota—only about a quarter of whom are estimated to be uninsured—would leave the country but for the rule, s*ee supra* pp.3-4, it is even more unlikely that any of those individuals would decide to remain because of a short-lived stay pending appeal.

Finally, plaintiffs give no explanation for waiting three months after the rule issued to sue, or why such delay should not weigh against them. When proposed-intervenors waited just six weeks to seek to intervene, plaintiffs urged unreasonable delay, noting proposed-intervenors' failure to explain their delay and the year-long notice-and-comment rulemaking. R.Doc. 77, at 2-3. A delay's reasonableness "is context dependent," *Ng v. Board of Regents of Univ. of Minn.*, 64 F.4th 992, 998 (8th Cir. 2023), and where plaintiffs give no reason for waiting three of the five months between the rule's promulgation (over a year after proposal) and its effective date to

13

even file a complaint, this Court should conclude "that the [asserted] harm would not be serious enough to justify a preliminary injunction," *Adventist Health Sys./SunBelt, Inc. v. HHS*, 17 F.4th 793, 805 (8th Cir. 2021) (alterations omitted)).

## CONCLUSION

The district court's order should be stayed pending appeal.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

CATHERINE M.A. CARROLL
   *Deputy Assistant Attorney General*

MELISSA N. PATTERSON

 *s/ Leif Overvold*
LEIF OVERVOLD
JOSHUA M. KOPPEL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7226*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*
   *leif.overvold2@usdoj.gov*

December 2024

14

Appellate Case: 24-3521   Page: 16   Date Filed: 12/19/2024 Entry ID: 5468358

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply contains 3,193 words, consistent with the word limit requested in defendants' unopposed Motion for Leave to File Overlength Reply filed December 19, 2024. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the reply has been scanned for viruses, and the reply is virus free.

*s/ Leif Overvold*
Leif Overvold

# CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2024, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Leif Overvold*
Leif Overvold