# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3521
_____

State of Kansas; State of North Dakota; State of Alabama; State of Idaho; State of Indiana; State of Iowa; State of Missouri; State of Montana; State of Nebraska; State of New Hampshire; State of Ohio; State of South Carolina; State of South Dakota; State of Tennessee; Commonwealth of Virginia; Commonwealth of Kentucky; State of Texas; State of Florida; State of Arkansas

*Plaintiffs - Appellees*

v.

United States of America; Centers for Medicare & Medicaid Services

*Defendants - Appellants*

------------------------------

CASA; Hyun Kim; Claudia Moya Lopez; Dania Quezada Torres

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: December 19, 2024
Filed: December 23, 2024
[Published]
_____

Appellate Case: 24-3521   Page: 1   Date Filed: 12/23/2024 Entry ID: 5469589

Before SMITH, KELLY, and GRASZ, Circuit Judges.

_____

PER CURIAM.

On May 8, 2024, the Centers for Medicare & Medicaid Services (agency) promulgated a final rule that, in effect, now allows Deferred Action for Childhood Arrivals (DACA) recipients to enroll in health insurance plans through the Patient Protection and Affordable Care Act (ACA) exchanges. *See* 89 Fed. Reg. 39,392, 39,415 (May 8, 2024); 45 C.F.R. § 155.410(e)(4). Nineteen states[1] filed a civil suit in the United States District Court for the District of North Dakota (district court)[2] seeking a declaration that the new rule violates the Administrative Procedure Act and an injunction preventing the rule from going into effect. On December 9, over the agency's opposition, the district court granted a preliminary injunction and stay, preventing the agency from enforcing the rule as to the 19 plaintiff-states.

On December 11, 2024, the agency filed a notice of appeal. On December 13, the agency filed a motion seeking a stay of the district court's December 9 order, pending resolution of this appeal. Alternatively, the agency sought a temporary administrative stay of the December 9 order pending a ruling on its request for a stay pending resolution of the appeal. The agency argued that the district court's injunction requires it to make significant changes to its ACA health-related exchanges on December 22, 2024.

---

[1]The plaintiff-states are Ohio, Idaho, Nebraska, South Carolina, Kansas, Alabama, Virginia, Tennessee, Indiana, Missouri, Montana, North Dakota, South Dakota, Iowa, New Hampshire, Kentucky, Texas, Florida, and Arkansas.

[2]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

On December 16, 2024, we granted the agency's request for a temporary administrative stay of the district court's December 9 order, pending our consideration of the agency's motion to stay the district court's order pending appeal. Having now considered the motion for stay pending appeal, we vacate the administrative stay, deny the agency's motion for stay pending appeal, and direct the Clerk of Court to expedite the merits briefing schedule for review of the district court's grant of the plaintiff-states' motion for preliminary injunction.

"Federal Rule of Appellate Procedure 8(a) governs the power of a court of appeals to stay an order of a district court pending appeal." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). "A stay pending appeal . . . has functional overlap with an injunction, particularly a preliminary one." *Nken v. Holder*, 556 U.S. 418, 428 (2009). Like a preliminary injunction, a motion for stay pending appeal "can have the practical effect of preventing some action before the legality of that action has been conclusively determined." *Id.* The difference, however, is that "a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id.* at 428–29. As the Supreme Court has explained, "[a] stay simply suspends judicial alteration of the status quo, while injunctive relief grants judicial intervention that has been withheld by lower courts." *Id.* (cleaned up).

"A stay is not a matter of right, even if irreparable injury might otherwise result" but instead is "an exercise of judicial discretion." *Id.* at 433 (internal quotation marks omitted). "[T]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotation marks omitted). The agency, as the party moving for the stay pending appeal, "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 434. "A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (internal quotation marks omitted). The Supreme Court has "distilled" "those legal principles" "into consideration of [the following] four factors":

-3-

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (internal quotation marks omitted); *see also Brady*, 640 F.3d at 789 (same).

"[S]ubstantial overlap" exists "between these factors and the factors governing preliminary injunctions . . . because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Id.* "The first two factors of the traditional standard are the most critical." *Id.* For these two factors, the movant must show "more than a mere possibility of relief" and more than "some possibility of irreparable injury." *Id.* (internal quotation marks omitted). "[T]he possibility standard is too lenient." *Id.* (internal quotation marks omitted). "The most important factor is likelihood of success on the merits, *although a showing of irreparable injury without a stay is also required*." *Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2017) (emphasis added) (citing *Brady*, 640 F.3d at 789). "In deciding whether the court should stay the grant or denial of a preliminary injunction pending appeal, the motions panel is predicting the likelihood of success of the appeal. That is, the motions panel is predicting rather than deciding what our merits panel will decide." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 656 (9th Cir. 2021). "Ultimately, we must consider the relative strength of the four factors, balancing them all." *Brady*, 905 F.3d at 557 (internal quotation marks omitted).

For purposes of our analysis, even if we assume, without deciding, that the agency has shown a likelihood of success on the merits of its appeal,[3] it has failed to

---

[3]The agency devotes a substantial portion of its brief to argue that it is likely to succeed on the merits of its appeal because "[t]he district court erred in concluding

-4-

Appellate Case: 24-3521     Page: 4     Date Filed: 12/23/2024 Entry ID: 5469589

demonstrate that the agency will suffer irreparable harm. *See Brady*, 640 F.3d at 789 ("The movant must show that it will suffer irreparable harm unless a stay is granted."). "The irreparable-harm analysis focuses on the *moving* party, not the nonmoving party *or some third party.*" *Walsh v. Ahern Rentals, Inc.*, No. 21-16124, 2022 WL 118636, at *2 n.2 (9th Cir. Jan. 12, 2022) (emphases added) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). In its motion, the agency relies on alleged irreparable harm to third parties—individuals who enrolled in health-insurance plans under the final rule. Furthermore, we note that, by the agency's own admission, those health-insurance plans have not yet gone into effect. Appellants' Motion at 18 (stating that the health-insurance plans go into effect on January 1, 2025). As the plaintiff-states explain, the agency has failed to show "what (if any) harm the 2,600 DACA recipients are going to experience by temporarily restoring the pre-Rule status quo." Appellees' Response at 13. The status quo prior to the passage of the final rule was that CMS "specifically excluded DACA recipients" from "its definition of lawfully present for purposes of the ACA." R. Doc. 117, at 3. Moreover,

---

North Dakota has standing and that venue was thus proper." Appellants' Emergency Motion for an Administrative Stay Pending Appeal (Appellants' Motion) at 6. The plaintiff-states respond that "at least three Plaintiff States have standing" and that the agency has "not made a 'strong showing' that [it] can even appeal the denial of a venue transfer at this time." Appellees' Response in Opposition to Emergency Motion for an Administrative Stay and Stay Pending Appeal (Appellees' Response) at 18. We need not resolve these preliminary matters of standing and venue because we will assume that the agency has satisfied its burden of showing that it is likely to succeed on the merits of its appeal. *See Sessler v. City of Davenport*, 990 F.3d 1150, 1155 (8th Cir. 2021) ("The parties primarily dispute whether the district court abused its discretion in determining Sessler failed to demonstrate a sufficient likelihood of success on the merits of his claim. Even if we assume for purposes of this appeal, without deciding, that Sessler has shown a likelihood of success on the merits, we find Sessler's inability to demonstrate a threat of irreparable harm heavily weighs against granting preliminary injunctive relief."). Exercising our judicial discretion, however, we conclude that the remaining factors, discussed *infra*, counsel in favor of us denying the agency's emergency motion for stay pending appeal.

it was the agency that "delayed the effective date of this Rule by one year past its original effective date." Appellees' Response at 14 (citing 89 Fed. Reg. at 39,415 ("[W]e had targeted a potential effective date of November 1, 2023.")).

"[I]n considering whether the issuance of a stay pending appeal will substantially injure the other party, the maintenance of the status quo is an important consideration in granting [or denying] a stay." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (internal quotation marks omitted). As just explained, the status quo prior to the rule's passage was that DACA recipients were excluded from coverage.

Finally, the public interest counsels in favor of maintaining the status quo until the merits panel can adjudicate the case. In the Personal Responsibility and Work Opportunity Act of 1996 (PRWORA), Congress announced a "compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6).

Accordingly, we vacate our administrative stay, deny the agency's motion for stay pending appeal, and order the Clerk of Court to expedite the briefing schedule for full consideration by a merits panel.

KELLY, Circuit Judge, dissenting.

North Dakota lacks standing to seek a preliminary injunction to stop Defendants from enforcing the Final Rule. For this reason, I would vacate the preliminary injunction and remand to the district court to either dismiss the action or transfer it to another venue.

To prove Article III standing, a plaintiff must establish an "injury in fact" that is caused by the defendant and redressable by a court order. See United States v. Texas, 599 U.S. 670, 676 (2023). The parties agree that North Dakota will suffer no

direct injury from enforcement of the Final Rule: it is the federal government—not North Dakota—that will bear the additional costs of making qualified health plans available to DACA recipients. Rather, Plaintiffs assert indirect injury, in the form of resulting financial harm. But in my view, any such indirect injury is both too attenuated and too speculative to support standing.

Plaintiffs assert that DACA recipients in North Dakota will have an incentive to remain in the state because of the Final Rule, which in turn will result in increased education, healthcare, law enforcement, public assistance and other downstream costs. As an initial matter, this alleged injury relies on the conduct of third parties—the DACA recipients. "[T]o thread the causation needle [when the alleged action only indirectly affects the plaintiff], the plaintiff must show that the 'third parties will likely react in predictable ways' that in turn will likely injure the plaintiffs." FDA v. All. for Hippocratic Med., 602 U.S. 367, 383 (2024) (quoting California v. Texas, 593 U.S. 659, 675 (2021)). A plaintiff may not rely on causation inferences that are speculative. See Clapper v. Amnesty Int'l, 568 U.S. 398, 413 (2013).

Here, Plaintiffs broadly assert that "[i]t is likely that [non-citizens] who would otherwise have returned to their countries of origin will instead remain in the United States because of the eligibility for ACA coverage provided by the Final Rule." But this conclusory allegation lacks factual support. Furthermore, it fails to acknowledge that the relevant third-party actors are not all non-citizens, but rather DACA recipients. On this score, Plaintiffs have failed to explain how *DACA recipients* would "predictabl[y]" respond in such a way. DACA recipients, who almost by definition have remained in the country for years, have done so *despite* lacking access to the insurance exchanges up until this year. Plaintiffs do not explain why the Final Rule changes that calculus.

-7-

Plaintiffs' standing theory would effectively allow any plaintiff to challenge a law that incentivized any citizen or noncitizen to remain in a state. In my view, without further factual allegations, North Dakota lacks standing to seek injunctive relief. See Arizona v. Biden, 40 F.4th 375 (6th Cir. 2022) ("Are we really going to say that any federal regulation of individuals through a policy statement that imposes peripheral costs on a State creates a cognizable Article III injury for the State to vindicate in federal court? If so, what limits on state standing remain?").

Because North Dakota lacks standing, it is not a proper plaintiff. As a result, it can no longer be "the plaintiff" for purposes of determining proper venue under 28 U.S.C. § 1391(e)(1)(C). See also Maybelline Co. v. Noxell Corp., 813 F.2d 901, 903 n.1 (8th Cir. 1987) (noting venue issue was "properly before us" on review of a preliminary injunction). I would vacate the preliminary injunction and remand to the district court. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

Respectfully, I dissent.

_____

Appellate Case: 24-3521    Page: 8    Date Filed: 12/23/2024 Entry ID: 5469589