No. 24-3521

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

———————————

STATE OF KANSAS, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of North Dakota

———————————

## ADDENDUM

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

CATHERINE M.A. CARROLL
  *Deputy Assistant Attorney General*

MELISSA N. PATTERSON
LEIF OVERVOLD
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7226*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

Order Granting Motion for Preliminary Injunction and Stay ..........................................A1

8 U.S.C. § 1611 ........................................................................................ A19

8 U.S.C. § 1641 ........................................................................................ A21

28 U.S.C. § 1391 ...................................................................................... A22

42 U.S.C. § 18032 .................................................................................... A23

42 U.S.C. § 18071 .................................................................................... A24

8 C.F.R. § 1.3 ........................................................................................... A26

45 C.F.R. § 152.2 (2023) ......................................................................... A28

45 C.F.R. § 152.20 ................................................................................... A30

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

State of Kansas et al.,

                    Plaintiffs,

vs.                                                                        Case No. 1:24-cv-00150

United States of America et al,

                    Defendants.

---

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AND STAY,**
**FINDING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER,**
**AND DENYING MOTIONS TO DISMISS**

---

[¶ 1]    THIS MATTER comes before the Court upon a Motion for Preliminary Injunction and Motion for Stay filed by the Plaintiffs[1] on August 30, 2024. Doc. Nos. 35, 63. The United States of America and the Centers for Medicare & Medicaid Services ("Defendants") filed a Response on September 25, 2024. Doc. No. 61. Plaintiffs filed their Reply on October 9, 2024. Doc. No. 81. Amicus briefs have also been filed in this matter. Nineteen states[2] and the District of Columbia joined the Defendants in opposition to the Motions. Doc. No. 69. An additional amicus brief was filed by various organizations[3] in support of Defendants. A hearing on the motion was held on October 15, 2024. Doc. No. 84. Post-hearing briefing was ordered and completed on November

---

[1] The Plaintiffs are nineteen States ("Plaintiff States"): Ohio, Idaho, Nebraska, South Carolina, Kansas, Alabama, Virginia, Tennessee, Indiana, Missouri, Montana, North Dakota, South Dakota, Iowa, New Hampshire, Kentucky, Texas, Florida, and Arkansas.
[2] The Defendant States include New Jersey, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington.
[3] The Defendant Organizations include the American Cancer Society Cancer Action Network, American Lung Association, Epilepsy Foundation of American Leukemia & Lymphoma Society, and the Muscular Dystrophy Association.

- 1 -

12, 2024. Doc. Nos. 87, 101, 103, 111. Defendants filed a brief in response to the supplemental information on November 14, 2024.

[¶ 2]    While waiting for supplemental briefing, Plaintiffs filed a Motion for Temporary Restraining Order on November 1, 2024. Doc. No. 105. Defendants filed a Response on November 1, 2024. Doc. No. 107. Defendants then filed (1) a Motion to Dismiss for Lack of Jurisdiction, (2) a Motion to Dismiss for Failure to State a Claim, and (3) a Motion to Dismiss or Transfer Case for Improper Venue on November 4, 2024. Doc. No. 108. Plaintiffs filed a Response to all Motions on November 25, 2024. Doc. No. 114. The deadline for Defendants to file a Reply has passed. For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction and Stay, finds as **MOOT** Plaintiffs' Motion for Temporary Restraining Order, and **DENIES** Defendants' Motions to Dismiss.

## INTRODUCTION

[¶ 3]    This case involves a change to the Deferred Action for Childhood Arrivals ("DACA") program from a final rule promulgated by the Centers for Medicare & Medicaid Services ("CMS"). See 89 Fed. Reg. 39,392-01 (May 8, 2024) ("Final Rule"). The Final Rule revised CMS's definition of "lawfully present" to allow DACA recipients to enroll in health insurance plans through the Patient Protection and Affordable Care Act ("ACA") exchanges. The primary points of contention in this case are (1) whether Plaintiffs have standing, (2) whether the change to include DACA recipients as lawfully present is contrary to congressional intent and (3) whether CMS acted within its authority under the Administrative Procedure Act ("APA").

## BACKGROUND

[¶ 4]    In 2010, Congress enacted the ACA requiring each state to create an exchange or platform to purchase health insurance and make qualified health plans ("QHPs") available to individuals.

King v. Burwell, 576 U.S. 473, 478–79 (2015); 42 U.S.C. 18031(d)(2)(A). Whether states create their own exchanges or allow the federal government to operate them is up to their discretion. 42 U.S.C. §§ 18031(b)(1), 18041(c). However, the ACA only allows qualified individuals to enroll in QHPs. 42 U.S.C. §§ 18021(a), 18032(a)(1). To qualify, the individual must reside in the state operating the exchange and be a citizen or national of the United States or a noncitizen that is lawfully present in the United States. 42 U.S.C. §§ 18032(a)(1), (f)(3). The ACA does not define lawfully present. See id. at 18032(f)(3).

[¶ 5]    In 2012, the Secretary of Homeland Security issued a memorandum establishing the DACA program. Mem. from Sec'y Napolitano (June 15, 2012), https://perma.cc/PRR8-PBT7. The memorandum set forth how the Department of Homeland Security ("DHS") would exercise its prosecutorial discretion with certain "low priority cases." Id. at 1. The memorandum allowed noncitizens to apply for a two-year renewable period of deferred action if the individual: (1) came to the United States under the age of sixteen, (2) had continuously resided in the United States for at least five years prior to the date of the memorandum and present in the United States on the date of the memorandum, (3) were in school, had graduated high school, earned a GED, or were honorably discharged as veterans, (4) were not convicted of a felony offense, significant misdemeanor offense, multiple misdemeanor offenses, or otherwise posed a threat to national security and public safety, and (5) not above the age of thirty. Id. CMS amended its definition of "lawfully present" at this time to specifically exclude DACA recipients. See 77 Fed. Reg. 18314.

[¶ 6]    In April 2023, CMS issued Notice of Proposed Rulemaking that would, in relevant part, allow DACA recipients and employment-authorized aliens to be considered lawfully present for purposes of the ACA. See 88 Fed. Reg. 25313; 89 Fed. Reg. 39392.[4] The Final Rule was published

---

[4] The Summary of the rule reads:

on May 8, 2024, and estimated 147,000 DACA recipients were expected to enroll in QHPs through an exchange because of the change. 89 Fed. Reg. at 39393–94. The Final Rule also adds individuals granted employment authorization numbers under 8 C.F.R. Section 274a.12(c) into the definition of lawfully present for ACA eligibility. Id. at 39408. This addition expands eligible categories for coverage from seven[5] to thirty-six. Id. The Final Rule became effective on November 1, 2024. Id. at 39393.

[¶ 7]    Three Plaintiff States privy to this lawsuit have elected to create a state-based exchange ("SBE") to handle QHP enrollment: Kentucky, Idaho, and Virginia. These states, and others who run their own SBE, will incur two separate costs. The first is $184,918 to develop and code changes to each state's exchange eligibility system. 89 Fed. Reg. at 39423, 26 table 2. The second is $624,142 in state application processing charges to assist those impacted by the Final Rule. Id. at 39424, 26; see also Doc. No. 35-2, ¶¶ 20–22. This brings the total cost for the SBE Plaintiffs to $809,060. The remaining Plaintiffs argue they suffer injury due to extra state expenses associated with processing more DACA recipients.

---

This final rule makes several clarifications and updates the definitions currently used to determine whether a consumer is eligible to enroll in a Qualified Health Plan (QHP) through an Exchange; a Basic Health Program (BHP), in States that elect to operate a BHP; and for Medicaid and Children's Health Insurance Programs (CHIPs). **Specifically, Deferred Action for Childhood Arrivals (DACA) recipients and certain other noncitizens will be included in the definitions of "lawfully present" that are used to determine eligibility to enroll in a QHP through an Exchange**, for Advance Payments of the Premium Tax Credit (APTC) and Cost-Sharing Reductions (CSRs), or for a BHP. . . . **These regulations are effective on November 1, 2024.**

89 Fed Reg. 39392 (emphasis added).

[5] The old version of 8 C.F.R. Section 152.2(4)(iii) included only seven categories under 8 C.F.R. Sections 274a.12(c)(9), (10), (16), (18), (20), (22), or (24).

- 4 -

## JURISDICTION

[¶ 8]    The Defendants argue venue is improper here because North Dakota does not have standing independent of the other Plaintiffs and therefore, this action should be dismissed or transferred to another jurisdiction. The Plaintiffs argue in their opening brief that the States have standing under the "special solicitude" standard under Massachusetts v. EPA, 549 U.S. 497, 520 (2007). In the alternative, Plaintiffs argue North Dakota has standing due to the pocketbook costs associated with the Final Rule and, therefore, venue is proper.

[¶ 9]    When the United States or its agencies are a defendant, venue is proper in any judicial district in which the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e)(1)(c). It is the Plaintiffs' burden to prove this district is a proper venue. Rare Breed Triggers, LLC v. Garland, 639 F. Supp. 3d 903, 907 (D.N.D. 2022) (noting that plaintiffs bear the burden of demonstrating the chosen district is a proper venue when the defense raises an objection). Plaintiffs allege in the complaint that North Dakota's residence establishes venue. Doc. No. 35, ¶ 22. For venue to be proper here, North Dakota must have standing independent of the other Plaintiffs. 28 U.S.C. § 1406(a) (where venue is improper, the Court may transfer to another venue where the claims could have been brought); see also Kansas v. Garland, No. 2:24CV00088 JM, 2024 WL 2384611 at *1 (E.D. Ark. May 23, 2024) ("Because no plaintiff with standing resides in this district, venue is improper.").

### I.    Procedural vs. Substantive Right under Massachusetts v. EPA

[¶ 10]    The Court must first address whether North Dakota and the other Plaintiffs have "special solicitude" and thus do not need to meet all the traditional requirements of standing. Massachusetts v. EPA, 549 U.S. at 520. The Eighth Circuit has ruled Massachusetts v. EPA "did not eliminate[] the basic requirements for standing just because a state is the plaintiff. Missouri v. Yellen, 39

- 5 -

F.4th 1063, 1070 n.7 (8th Cir. 2022); accord La. ex rel. La. Dep't of Wildlife & Fisheries v. NOAA, 70 F.4th 872, 882 (5th Cir. 2023). Therefore, Plaintiffs must meet all the traditional requirements for standing.[6]

## II.   North Dakota's Standing

[¶ 11]   North Dakota alleges it suffers injury because (1) the DACA change provides a valuable public benefit that will foreseeably encourage alien beneficiaries who are here unlawfully to remain in the United States, (2) it must educate DACA recipient children, and (3) DACA recipients consume costly public benefits.

[¶ 12]   Standing requires the party to show they have, or will suffer, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). The plaintiff "bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter." Carney v. Adams, 592 U.S. 53, 59, (2020). She must support each element of standing "with the manner and degree of evidence required at the successive stages of

---

[6] Also worthy to note is Justice Gorsuch's concurrence in United States v. Texas, which states:

> if an exercise of coercive power matters so much to the Article III standing inquiry, how to explain decisions like Massachusetts v. EPA? There the court held that Massachusetts had standing to challenge the federal government's decision not to regulate greenhouse gas emissions from new motor vehicles. And what could be less coercive than a decision not to regulate? In Massachusetts v. EPA, the Court chose to overlook this difficulty in part because it thought the State's claim of standing deserved "special solicitude." I have doubts about that move. Before Massachusetts v. EPA, the notion that States enjoy relaxed standing rules 'ha[d] no basis in our jurisprudence.' Nor has 'special solicitude' played a meaningful role in this Court's decisions in the years since. **Even so, it's hard not to wonder why the Court says nothing about 'special solicitude' in this case. And it's hard not to think, too, that lower courts should just leave that idea on the shelf in future ones.**

599 U.S. 670, 688–89 (2023) (Gorsuch, J., concurring) (cleaned up) (emphasis added).

the litigation." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992). At the preliminary injunction stage, then, the plaintiff must make a "clear showing" that she is "likely" to establish each element of standing. <u>See Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008).

[¶ 13]   The Supreme Court in <u>United States v. Texas</u> has said:

> [F]ederal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer. To be sure, States sometimes have standing to sue the United States or an executive agency or officer. But in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending. And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for standing can become more attenuated.

599 U.S. 670, 680 n.3 (2023); <u>accord</u> <u>Garland</u>, 2024 WL 2384611 at *2 (citing the same). The ACA requires states to create an "exchange" which "shall make available qualified health plans to qualified individuals." North Dakota elected to let the federal government run its exchange, so it is classified as a federally-facilitated exchange ("FFE"). <u>See</u>, *State-based Exchanges*, Centers for Medicare and Medicaid Services (Aug. 28, 2024), https://www.cms.gov/cciio/resources/fact-sheets-and-faqs/state-marketplaces . The Final Rule contemplates the federal government will bear the costs associated with the expansion for the states that have not elected to run its own SBE. <u>See</u> 89 Fed. Reg. at 39423–26 (discussing the financial impact of the Final Rule and noting "this change applies to the 18 State Exchanges not on the Federal platform"). The Final Rule does not directly impact FFEs.

[¶ 14]   As an FFE, North Dakota does not suffer a direct injury from the Final Rule. <u>See</u> <u>id.</u> at 39424–46 (providing the economic impact of the Final Rule on FFE, SBE, and SBE-FP states). Thus, North Dakota's claim for standing is more attenuated. While more difficult, it is not impossible for North Dakota to prove standing.

[¶ 15]  In recent years, states challenging federal immigration policies have proven injury in fact by demonstrating (1) an additional alien presence in that state because of the challenged action, (2) which results in additional costs paid from the state's treasury. Texas v. Mayorkas, No. 6:23-CV-00001, 2024 WL 4355197, at *4 (S.D. Tex. Sept. 30, 2024). The Court adopts this approach. The additional alien presence is easily met as the Final Rule contemplates an additional 147,000 aliens will be eligible to receive benefits, effectively increasing the population. As for additional costs, the Supreme Court has stated "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021). North Dakota has submitted evidence it costs $584.74 to issue driver licenses and identification cards to the 126 identified DACA recipients in the State. Doc. No. 103, p. 7. North Dakota also claims, while it cannot provide an exact figure, it can confirm at least one DACA recipient or dependent is enrolled in the state's public education system, incurring a cost of $14,345.87 per pupil on the State. Doc. No. 111. This amounts to almost $15,000 in monetary costs. At least one of the 147,000 individuals eligible to enroll in a QHP will reside in North Dakota, thus causing further monetary injury.

[¶ 16]  The Court notes North Dakota's theory on standing rests upon the actions of third parties, that is the actions of the 147,000 newly eligible aliens, which makes standing more difficult to prove than when the defendant acts directly on the plaintiff. Lujan, 504 U.S. at 561–562. However, standing can still exist if there is evidence third parties will likely react in predictable ways to the defendant's challenged conduct. Dep't of Comm. v. New York, 588 U.S. 752, 768 (2019). Certainty is not required so long as the likely reaction "does not rest on mere speculation." Id. A future injury can also establish standing so long as it is "certainly impending, or there is a

substantial risk that the harm will occur." <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 157 (2014).

[¶ 17]  In this case, Plaintiff States claim with DACA becoming available to roughly 147,000 people, it will cause them harm as the allure of health care will incentivize those who plan to leave the Plaintiff States to remain. The Defendants argue the Plaintiffs have offered no proof that any of the 147,000 DACA recipients would leave the respective Plaintiff States but for the Final Rule. However, the Supreme Court allows reliance on third-party incentives as part of proof showing likely behavior. <u>Dep't of Comm. v. New York</u>, 588 U.S. at 768 ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."); <u>see also</u> <u>Davis v. Fed. Election Comm'n</u>, 554 U.S. 724, 735 (2008) (concluding a significant risk of future injury was sufficient to establish standing, not whether injury is realized). These cases show if there is proof allowing a fair prediction of third-party responses, proof showing the challenged conduct produced the harm-causing choice is not required. Proof of predictable reactions can also include common-sense inferences. <u>See</u> <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, 155 (1972) ("[R]easonable inference may be drawn [by] the District Court, as the trier of fact.").

[¶ 18]  The Court concludes, through a common-sense inference, that the powerful incentive of health care will encourage aliens who may otherwise vacate the Plaintiff States to remain. <u>See</u> 8 U.S.C. § 1601(5) (noting the availability of public benefits is an incentive for illegal immigration that Congress has a compelling interest to remove). Their continued presence creates a substantial risk North Dakota will suffer monetary harm via issuing licenses and providing education. This is

sufficient to meet the injury in fact requirement.[7] The remaining standing elements are easily met. But for the Final Rule issued by the Defendants, North Dakota would not have to incur additional costs. Lastly, the Court can redress this harm by staying the Final Rule, preventing further injury. Therefore, the Court finds North Dakota has standing and therefore, venue is proper.

## **DISCUSSION**

### I.   **Preliminary Injunction**

[¶ 19]  Plaintiffs seek to exercise their right under the APA to seek a preliminary injunction. The APA provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C.A. § 705.

[¶ 20]  A plaintiff seeking a preliminary injunction must establish four factors showing such relief is warranted: (1) success on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 78 F.4th 1011, 1016 (8th Cir. 2023). When the government is the opposing party, the balance of harms factor and the public interest factor merge. Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009) "A district court has broad discretion when ruling on

---

[7] This type of "indirect monetary harm" was sufficient for the Supreme Court before and this discrepancy was referenced in a concurrence by Justice Gorsuch. See Texas v. United States, 599 U.S. at 688 (noting one dollar's worth of harm was sufficient for standing and points out how the Supreme Court allowed other states to challenge Executive Branch policies that indirectly caused them monetary harm in the past and ponders why the Supreme Court forbids the same actions now).

requests for preliminary injunctions." <u>Entergy, Arkansas, Inc.. v. Nebraska</u>, 210 F.3d 887, 898 (8th Cir. 2000).

[¶ 21]  When deciding whether to grant a preliminary injunction, courts ask "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." <u>Nebraska v. Biden</u>, 52 F.4th 1044, 1046 (8th Cir. 2022) (per curiam) (quoting <u>Glenwood Bridge, Inc. v. City of Minneapolis</u>, 940 F.2d 367, 370 (8th Cir. 1991)).

[¶ 22]  The movant bears the burden of demonstrating the preliminary injunction is warranted because a preliminary injunction is an "extraordinary remedy never awarded as of right." <u>Progressive Techs., Inc. v. Chaffin Holdings, Inc.</u>, 33 F.4th 481, 485 (8th Cir. 2022) (quoting <u>Winter</u>, 555 U.S. at 24). Likelihood of success on the merits is the most important factor, <u>Craig v. Simon</u>, 980 F.3d 614, 617 (8th Cir. 2020) (per curiam), and requires a movant to demonstrate at least a "fair chance of prevailing." <u>Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs</u>, 826 F.3d 1030, 1041 (8th Cir. 2016). Regardless, the Court is required to consider all the factors. <u>See</u> <u>Home Instead, Inc. v. Florance</u>, 721 F.3d 494, 500 (8th Cir. 2013).

### A.  Success on the Merits

[¶ 23]  Plaintiffs argue they are likely to succeed on the merits because the Final Rule is contrary to law or in excess of statutory authority and the Final Rule is arbitrary and capricious. Specifically, Plaintiffs claim the determination of DACA recipients as lawfully present is contrary to law because the "action" that is deferred by the DACA program is an enforcement action, namely deportation of the recipients' unlawful presence. <u>See</u> 8 C.F.R. § 236.22(b)(4) (limiting DACA availability to aliens who lack lawful immigration status). The Plaintiffs cite caselaw from the Eleventh Circuit that says "DACA recipients are simply given a reprieve from protentional

removal; that does not mean they are in any way 'lawfully present' under the [Immigration and Nationality Act]." Estrada v. Becker, 917 F.3d 1298, 1305 (11th Cir. 2019) (citation omitted). Additionally, they cite a Fifth Circuit case stating:

> DACA creates a new class of otherwise removable aliens who may obtain lawful presence, work authorization, and associated benefits. Congress determined which aliens can receive these benefits, and it did not include DACA recipients among them. We agree with the district court's reasoning and its conclusions that the DACA Memorandum contravenes comprehensive statutory schemes for removal, allocation of lawful presence, and allocation of work authorization.

Texas v. United States, 50 F.4th 498, 526 (5th Cir. 2022).[8] Plaintiffs also argue the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA") prohibits non-qualified aliens from receiving any federal public benefit. 8 U.S.C. § 1611(a). Lastly, they argue Congress has not included aliens granted deferred action within the definition of "qualified alien," 8 U.S.C. § 1641, nor do DACA recipients fall within an exception to the prohibition on public benefits. See 8 U.S.C. § 1611(b)(1).

[¶ 24] The Defendants argue the definition of lawfully present is consistent with the ACA because, while the ACA itself does not include a definition, there is other relevant congressional history that supports the Final Rule's definition. They also argue the definition is consistent with how many of the Plaintiff States interpret "similar terms" in state law. See Doc. No. 61, pp. 32–33 (citing statutory law from Kansas, Indiana, South Dakota, Montana, Idaho, Kentucky, Nebraska, Tennessee, Texas, and Virginia that allows aliens who are lawfully present, which includes DACA recipients, to apply for and receive driver's licenses).

---

[8] The Fifth Circuit applied the then binding framework of Chevron, which has since been overturned. See Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024). The Court does not apply the Chevron framework here.

[¶ 25]  In weighing success on the merits, the Court does not decide whether the movant "will ultimately win"; rather, the movant "must simply show a 'fair chance of prevailing.'" Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC, 953 F.3d 1041, 1045 (8th Cir. 2020) (quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Whether a movant has shown a fair chance of prevailing does not mean the movant must "prove greater than fifty per cent likelihood that [it] will prevail on the merits." Id. (cleaned up) (quoting Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981)). Under circumstances where the movant has no chance of succeeding, an injunction will not issue. Id.

[¶ 26]  Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). An agency has acted in excess of statutory authority when it "has gone beyond what Congress has permitted it to do" either by assuming authority it does not have or by exercising the authority it does have in an impermissible way. City of Arlington v. FCC, 569 U.S. 290, 297 (2013). When the ACA was passed, Congress empowered agencies to define who may enroll in QHPs through an exchange by issuing "regulations setting standards" for establishing operating exchanges and establishing a program for determining whether a noncitizen applicant is lawfully present for purposes of exchange eligibility. 42 U.S.C. §§18032(f)(3), 18041(a)(1).

[¶ 27]  As it currently stands, the ACA does not allow federal healthcare subsidies or coverage for aliens who are unlawfully present in the United States. 42 U.S.C. §18032(f)(3); see also Doc. No. 61, p. 31 (Defendants concede the ACA does not define lawfully present.). As a result, the Court agrees with the Fifth and Eleventh Circuits. The law of the land before the Final Rule was that DACA recipients were not lawfully present, which was recognized by CMS. 77 Fed. Reg. 52614;

- 13 -

45 C.F.R. § 152.2.  Like the Fifth Circuit stated, it is for Congress to determine who qualifies for lawful presence status, not agencies. Congress stated in PRWORA that non-qualified aliens are prohibited from receiving any federal public benefit. The authority granted to CMS by the ACA is to ascertain whether an individual meets the requirements for lawful status. It by no means allows the agency to circumvent congressional authority and redefine the term "lawfully present." Congress has laid out the categories of those who are qualified aliens in 8 U.S.C. § 1611(b), and nowhere does it state deferred action aliens are qualified aliens. CMS only has authority to determine if aliens fit into one of those established categories, not create a new one.

[¶ 28]  For the above stated reasons, the Court finds the Plaintiff States have proven a fair chance of prevailing because CMS acted contrary to law by redefining who is a qualified alien, a determination that is to be left to Congress. This factor weighs in favor of granting a preliminary injunction. Because the Court has concluded Plaintiffs will likely succeed on the merits because CMS acted contrary to law, there is no need to analyze the arbitrary and capricious claim.

### B.  Irreparable Harm

[¶ 29]  Plaintiffs claim irreparable harm through the costly public benefits they must expend to adhere to the Final Rule. Defendants argue the costs are indirect, which the Supreme Court has stated is insufficient; the harm is not impending; the States do not consider the benefits DACA recipients bring; and the costs are self-inflicted.

[¶ 30]  "Irreparable harm" signifies harm for which "a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. <u>Gen. Motors</u>, 563 F.3d at 319. "[A] party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." <u>Morehouse Enterprises, LLC</u>, 78 F.4th at 1017 (citing <u>Dakotans for Health v. Noem</u>, 52 F.4th 381, 392 (8th Cir. 2022)). The

- 14 -

A14

plaintiffs must show the harm is not merely a possibility but is likely to occur absent preliminary injunctive relief. <u>Tumey v. Mycroft AI, Inc.</u>, 27 F.4th 657, 665 (8th Cir. 2022). "Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." <u>Wildhawk Invs., LLC v. Brava I.P., LLC</u>, 27 F.4th 587, 597 (8th Cir. 2022) (citing <u>DISH Network Serv. L.L.C. v. Laducer</u>, 725 F.3d 877, 882 (8th Cir. 2013)).

[¶ 31]  Here, the Plaintiffs have alleged monetary harms, which do not appear to be recoverable as the Final Rule specifically contemplates the costs each state and the federal government must cover. <u>Foerderer v. TransUnion Corp</u>, No. 1:20-CV-188, 2021 WL 2667524, at *2 (D.N.D. Apr. 20, 2021), <u>report and recommendation adopted sub nom.</u> <u>Foerderer v. Experian Info. Sols., Inc.</u>, No. 1:20-CV-00188, 2021 WL 2669554 (D.N.D. May 5, 2021) (opining the plaintiff's injuries are compensable by monetary damages and cannot be considered an irreparable harm); <u>see</u> 89 Fed. Reg. at 39423–24 (providing the cost of the Final Rule on the 18 SBE States will be 51% of the total approximate cost while the federal government provides the remaining 49% of funding). These costs are sufficient to establish irreparable harm.

[¶ 32]  Even if these costs were insufficient, allowing potential unlawful action would constitute irreparable harm. <u>See</u> <u>Shawnee Tribe v. Mnuchin</u>, 984 F.3d 95, 102 (D.C. Cir. 2021) (perpetuation of unlawful agency action is not in the public's best interest); <u>see also</u> <u>Maryland v. King</u>, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (When the government "is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury."). Plaintiffs here are faced with a choice: comply with what they believe to be an unlawful directive or lose federal government support to operate the costly exchanges required under the ACA. Other courts have found this type of "Hobson's choice" sufficient for irreparable harm. <u>See</u> <u>City of Albuquerque v. Barr</u>, 515 F. Supp. 3d 1163, 1175 (D.N.M. 2021) (collecting

cases from the Supreme Court, Ninth Circuit, and the Northern District of Illinois establishing the same). Therefore, the Plaintiffs have met the burden of proving irreparable harm.

### C.  Balance of Equities and the Public Interest

[¶ 33]  Plaintiffs argue the balance of equities and public interest weigh in their favor because the agency action is unlawful. The Defendants argue the public interest is best served by increasing access to health care. Congress has declared the nation has a "compelling interest" in "remov[ing] the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). To not suspend the Final Rule would empower CMS to harm the compelling interest established by Congress. "There is generally no public interest in the perpetuation of unlawful agency action." League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016). Where a party has established a strong likelihood of success on the merits, it is a strong indication that a preliminary injunction would serve the public interest. Shawnee Tribe, 984 F.3d at 102.

[¶ 34]  Because the Court found the Plaintiffs have proven likelihood of success on the merits, this factor weighs in favor of granting the preliminary injunction.

### D.  Conclusion

[¶ 35]  The preliminary injunction factors weigh in favor of issuing an injunction and a stay. Plaintiffs have shown likelihood of success on the merits because CMS acted contrary to law. Plaintiffs are likely to suffer irreparable harm from the expenses associated with carrying out the Final Rule and being faced with a Hobson's choice. This decision is in accord with what Fifth Circuit had previously decided. See Texas v. United States, 50 F.4th at 528-32. That reasoning is sound and should be embraced in the Eighth Circuit. Finally, the balance of equities and the public's interest are best served by enjoining the Final Rule. For those reasons, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction.

- 16 -

A16

## II.    Motion To Stay

[¶ 36]  Plaintiffs also request a stay to the Final Rule. A stay is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009) (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672-73 (1926)). The party requesting a stay bears the burden of showing the circumstances justify an exercise of that discretion. Id. at 433-34. The stay factors are: (1) whether the applicant is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Id. at 434. There is substantial overlap between the preliminary injunction and stay factors "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." Id.; see also Winter, 555 U.S. at 24.

[¶ 37]  Because the Court has found the preliminary injunction factors weigh in favor of the Plaintiffs, and because there is substantial overlap between the motion to stay and preliminary injunction factors, the Court finds Plaintiffs are entitled to a stay for the reasons articulated above. For those reasons, Plaintiffs' Motion to Stay is **GRANTED**.

## III.    Motion To Dismiss

[¶ 38]  Defendants filed a Motion to Dismiss on three grounds: lack of jurisdiction, failure to state a claim, and improper venue. Fed. R. Civ. P. 12(b)(1), (3), (6). The Federal Rules of Civil Procedure mandate the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff must show that success on

Appellate Case: 24-3521    Page: 19    Date Filed: 01/21/2025 Entry ID: 5476437

the merits is more than a "sheer possibility." <u>Id.</u> A complaint is sufficient if its "factual content . . .

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." <u>Id.</u> The Court must accept all factual allegations as true, except for legal conclusions or

"formulaic recitation of the elements of a cause of action." <u>Id</u>. at 681.

[¶ 39]   The Court has addressed all these concerns through the standing and preliminary injunction

analysis. The Court has jurisdiction and venue is proper in North Dakota. Additionally, Plaintiffs

have shown likelihood of success on the merits, proving they have stated a claim upon which relief

can be granted. This conclusion is supported by evidence in the record offered by the Plaintiffs.

<u>See</u> Doc. Nos. 35-1, 35-2, 103, 103-1, 103-2, 111, 111-1. For these reasons, Defendants' Motions

to Dismiss are **DENIED**.

<u>**CONCLUSION**</u>

[¶ 40]   The Court has reviewed the record, relevant caselaw, and arguments of the parties. For the

above stated reasons, Plaintiffs' Motions for Preliminary Injunction and Stay (Doc. No. 35) are

**GRANTED**. Defendants are preliminary enjoined from enforcing the Final Rule against the 19

Plaintiff States. As a result, Plaintiffs' Motion for Temporary Restraining Order (Doc. No. 105) is

**MOOT**. Defendants' Motions to Dismiss **(**Doc. No. 108) are **DENIED**.

[¶ 41]   **IT IS SO ORDERED.**

DATED December 9, 2024.

Daniel M. Traynor, District Judge
United States District Court

- 18 -

**8 U.S.C. § 1611**

**§ 1611. Aliens who are not qualified aliens ineligible for Federal public benefits**

(a) In general

Notwithstanding any other provision of law and except as provided in subsection (b), an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit (as defined in subsection (c)).

(b) Exceptions

(1) Subsection (a) shall not apply with respect to the following Federal public benefits:

(A) Medical assistance under title XIX of the Social Security Act (or any successor program to such title) for care and services that are necessary for the treatment of an emergency medical condition (as defined in section 1903(v)(3) of such Act) of the alien involved and are not related to an organ transplant procedure, if the alien involved otherwise meets the eligibility requirements for medical assistance under the State plan approved under such title (other than the requirement of the receipt of aid or assistance under title IV of such Act, supplemental security income benefits under title XVI of such Act, or a State supplementary payment).

(B) Short-term, non-cash, in-kind emergency disaster relief.

(C) Public health assistance (not including any assistance under title XIX of the Social Security Act) for immunizations with respect to immunizable diseases and for testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease.

(D) Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

(E) Programs for housing or community development assistance or financial assistance administered by the Secretary of Housing and Urban Development, any program under title V of the Housing Act of 1949, or

A19

any assistance under section 1926c of Title 7, to the extent that the alien is receiving such a benefit on August 22, 1996.

(2) Subsection (a) shall not apply to any benefit payable under title II of the Social Security Act to an alien who is lawfully present in the United States as determined by the Attorney General, to any benefit if nonpayment of such benefit would contravene an international agreement described in section 233 of the Social Security Act, to any benefit if nonpayment would be contrary to section 202(t) of the Social Security Act, or to any benefit payable under title II of the Social Security Act to which entitlement is based on an application filed in or before August 1996.

(3) Subsection (a) shall not apply to any benefit payable under title XVIII of the Social Security Act (relating to the medicare program) to an alien who is lawfully present in the United States as determined by the Attorney General and, with respect to benefits payable under part A of such title, who was authorized to be employed with respect to any wages attributable to employment which are counted for purposes of eligibility for such benefits.

(4) Subsection (a) shall not apply to any benefit payable under the Railroad Retirement Act of 1974 or the Railroad Unemployment Insurance Act to an alien who is lawfully present in the United States as determined by the Attorney General or to an alien residing outside the United States.

(5) Subsection (a) shall not apply to eligibility for benefits for the program defined in section 1612(a)(3)(A) of this title (relating to the supplemental security income program), or to eligibility for benefits under any other program that is based on eligibility for benefits under the program so defined, for an alien who was receiving such benefits on August 22, 1996.

* * *

A20

**8 U.S.C. § 1641**

**§ 1641. Aliens who are not qualified aliens ineligible for Federal public benefits**

\* \* \*

(b) Qualified alien

For purposes of this chapter, the term "qualified alien" means an alien who, at the time the alien applies for, receives, or attempts to receive a Federal public benefit, is--

    (1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act,

    (2) an alien who is granted asylum under section 208 of such Act,

    (3) a refugee who is admitted to the United States under section 207 of such Act,

    (4) an alien who is paroled into the United States under section 212(d)(5) of such Act for a period of at least 1 year,

    (5) an alien whose deportation is being withheld under section 243(h) of such Act (as in effect immediately before the effective date of section 307 of division C of Public Law 104-208) or section 241(b)(3) of such Act (as amended by section 305(a) of division C of Public Law 104-208),

    (6) an alien who is granted conditional entry pursuant to section 203(a)(7) of such Act as in effect prior to April 1, 1980,

    (7) an alien who is a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980), or

    (8) an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 1612(b)(2)(G) of this title.

\* \* \*

A21

**28 U.S.C. § 1391**

**§ 1391. Venue generally**

\* \* \*

(e) Actions where defendant is officer or employee of the United States--

   (1) In general.--A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

\* \* \*

A22

**42 U.S.C. § 18032**

**§ 18032. Consumer choice**

\* \* \*

(f) Qualified individuals and employers; access limited to citizens and lawful residents

(1) Qualified individuals

In this title:

(A) In general

The term "qualified individual" means, with respect to an Exchange, an individual who--

(i) is seeking to enroll in a qualified health plan in the individual market offered through the Exchange; and

(ii) resides in the State that established the Exchange.

(B) Incarcerated individuals excluded

An individual shall not be treated as a qualified individual if, at the time of enrollment, the individual is incarcerated, other than incarceration pending the disposition of charges.

\* \* \*

(3) Access limited to lawful residents

If an individual is not, or is not reasonably expected to be for the entire period for which enrollment is sought, a citizen or national of the United States or an alien lawfully present in the United States, the individual shall not be treated as a qualified individual and may not be covered under a qualified health plan in the individual market that is offered through an Exchange.

A23

**42 U.S.C. § 18071**

**§ 18071. Reduced cost-sharing for individuals enrolling in qualified health plans**

\* \* \*

(b) Eligible insured

In this section, the term "eligible insured" means an individual--

(1) who enrolls in a qualified health plan in the silver level of coverage in the individual market offered through an Exchange; and

(2) whose household income exceeds 100 percent but does not exceed 400 percent of the poverty line for a family of the size involved.

In the case of an individual described in section 36B(c)(1)(B) of Title 26, the individual shall be treated as having household income equal to 100 percent for purposes of applying this section.

\* \* \*

(e) Rules for individuals not lawfully present

(1) In general

If an individual who is an eligible insured is not lawfully present--

(A) no cost-sharing reduction under this section shall apply with respect to the individual; and

(B) for purposes of applying this section, the determination as to what percentage a taxpayer's household income bears to the poverty level for a family of the size involved shall be made under one of the following methods:

(i) A method under which--

(I) the taxpayer's family size is determined by not taking such individuals into account, and

(II) the taxpayer's household income is equal to the product of the taxpayer's household income (determined without regard to this subsection) and a fraction--

(aa) the numerator of which is the poverty line for the taxpayer's family size determined after application of subclause (I), and

A24

(bb) the denominator of which is the poverty line for the taxpayer's family size determined without regard to subclause (I).

(ii) A comparable method reaching the same result as the method under clause (i).

(2) Lawfully present

For purposes of this section, an individual shall be treated as lawfully present only if the individual is, and is reasonably expected to be for the entire period of enrollment for which the cost-sharing reduction under this section is being claimed, a citizen or national of the United States or an alien lawfully present in the United States.

(3) Secretarial authority

The Secretary, in consultation with the Secretary of the Treasury, shall prescribe rules setting forth the methods by which calculations of family size and household income are made for purposes of this subsection. Such rules shall be designed to ensure that the least burden is placed on individuals enrolling in qualified health plans through an Exchange and taxpayers eligible for the credit allowable under this section.

\* \* \*

**8 C.F.R. § 1.3**

## § 1.3. Lawfully present aliens for purposes of applying for Social Security benefits.

(a) Definition of the term an "alien who is lawfully present in the United States." For the purposes of 8 U.S.C. 1611(b)(2) only, an "alien who is lawfully present in the United States" means:

(1) A qualified alien as defined in 8 U.S.C. 1641(b);

(2) An alien who has been inspected and admitted to the United States and who has not violated the terms of the status under which he or she was admitted or to which he or she has changed after admission;

(3) An alien who has been paroled into the United States pursuant to section 212(d)(5) of the Act for less than 1 year, except:

(i) Aliens paroled for deferred inspection or pending removal proceedings under section 240 of the Act; and

(ii) Aliens paroled into the United States for prosecution pursuant to 8 CFR 212.5(b)(3);

(4) An alien who belongs to one of the following classes of aliens permitted to remain in the United States because DHS has decided for humanitarian or other public policy reasons not to initiate removal proceedings or enforce departure:

(i) Aliens currently in temporary resident status pursuant to section 210 or 245A of the Act;

(ii) Aliens currently under Temporary Protected Status (TPS) pursuant to section 244 of the Act;

(iii) Cuban–Haitian entrants, as defined in section 202(b) of Pub.L. 99–603, as amended;

(iv) Family Unity beneficiaries pursuant to section 301 of Pub.L. 101–649, as amended;

(v) Aliens currently under Deferred Enforced Departure (DED) pursuant to a decision made by the President;

(vi) Aliens currently in deferred action status;

(vii) Aliens who are the spouse or child of a United States citizen whose visa petition has been approved and who have a pending application for adjustment of status;

Appellate Case: 24-3521    Page: 28    Date Filed: 01/21/2025 Entry ID: 5476437

(5) Applicants for asylum under section 208(a) of the Act and applicants for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days.

* * *

**45 C.F.R. § 152.2 (2023)**

**§ 152.2. Definitions**

* * *

Lawfully present means

(1) A qualified alien as defined in section 431 of the Personal Responsibility and Work Opportunity Act (PRWORA) (8 U.S.C. 1641);

(2) An alien in nonimmigrant status who has not violated the terms of the status under which he or she was admitted or to which he or she has changed after admission;

(3) An alien who has been paroled into the United States pursuant to section 212(d)(5) of the Immigration and Nationality Act (INA) (8 U.S.C. 1182(d)(5)) for less than 1 year, except for an alien paroled for prosecution, for deferred inspection or pending removal proceedings;

(4) An alien who belongs to one of the following classes:

(i) Aliens currently in temporary resident status pursuant to section 210 or 245A of the INA (8 U.S.C. 1160 or 1255a, respectively);

(ii) Aliens currently under Temporary Protected Status (TPS) pursuant to section 244 of the INA (8 U.S.C. 1254a), and pending applicants for TPS who have been granted employment authorization;

(iii) Aliens who have been granted employment authorization under 8 CFR 274a.12(c)(9), (10), (16), (18), (20), (22), or (24);

(iv) Family Unity beneficiaries pursuant to section 301 of Public Law 101–649 as amended;

(v) Aliens currently under Deferred Enforced Departure (DED) pursuant to a decision made by the President;

(vi) Aliens currently in deferred action status;

(vii) Aliens whose visa petitions have been approved and who have a pending application for adjustment of status;

(5) A pending applicant for asylum under section 208(a) of the INA (8 U.S.C. 1158) or for withholding of removal under section 241(b)(3) of the INA (8 U.S.C. 1231) or under the Convention Against Torture who has been granted employment authorization, and such an applicant under the age of 14 who has had an application pending for at least 180 days;

A28

(6) An alien who has been granted withholding of removal under the Convention Against Torture; or

(7) A child who has a pending application for Special Immigrant Juvenile status as described in section 101(a)(27)(J) of the INA (8 U.S.C. 1101(a)(27)(J)).

(8) Exception. An individual with deferred action under the Department of Homeland Security's deferred action for childhood arrivals process, as described in the Secretary of Homeland Security's June 15, 2012, memorandum, shall not be considered to be lawfully present with respect to any of the above categories in paragraphs (1) through (7) of this definition.

* * *

**45 C.F.R. § 152.20**

**§ 152.20. Definitions**

\* \* \*

Lawfully present means a noncitizen who—

(1) Is a qualified noncitizen as defined at 42 CFR 435.4;

(2) Is in a valid nonimmigrant status, as defined in 8 U.S.C. 1101(a)(15) or otherwise under the immigration laws (as defined in 8 U.S.C. 1101(a)(17));

(3) Is paroled into the United States in accordance with 8 U.S.C. 1182(d)(5) for less than 1 year, except for a noncitizen paroled for prosecution, for deferred inspection or pending removal proceedings;

(4) Is granted temporary resident status in accordance with 8 U.S.C. 1160 or 1255a;

(5) Is granted Temporary Protected Status (TPS) in accordance with 8 U.S.C. 1254a;

(6) Is granted employment authorization under 8 CFR 274a.12(c);

(7) Is a Family Unity beneficiary in accordance with section 301 of Pub.L. 101–649 as amended; or section 1504 of the LIFE Act Amendments of 2000, title XV of H.R. 5666, enacted by reference in Pub.L. 106–554 (see section 1504 of App. D to Pub.L. 106–554);

(8) Is covered by Deferred Enforced Departure (DED) in accordance with a decision made by the President;

(9) Is granted deferred action, including but not limited to individuals granted deferred action under 8 CFR 236.22;

(10) Has a pending application for adjustment of status;

(11)

    (i) Has a pending application for asylum under 8 U.S.C. 1158, for withholding of removal under 8 U.S.C. 1231(b)(3)(A), or for protection under the regulations implementing the Convention Against Torture; and

    (ii) Is under the age of 14;

(12) Has been granted withholding of removal under the regulations implementing the Convention Against Torture; or

(13) Has a pending or approved petition for Special Immigrant Juvenile classification as described in 8 U.S.C. 1101(a)(27)(J).

Appellate Case: 24-3521   Page: 32   Date Filed: 01/21/2025   Entry ID: 5476437

\* \* \*

A31